## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES THOMAS and DAVID HIXSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-0005 |
| | ) | |
| BILL HASLAM, Governor of Tennessee, in | ) | Judge Trauger |
| his official capacity; DAVID W. PURKEY, | ) | |
| Commissioner for the Department of Safety | ) | |
| and Homeland Security, in his official | ) | |
| capacity; and HERBERT SLATERY, III, | ) | |
| Attorney General and Reporter, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMMISSIONER DAVID W. PURKEY'S RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56.01(c), and without waving the arguments and defenses set forth in his Motion to Dismiss (D.E. 23), or his contemporaneously-filed Motion for Summary Judgment, Defendant Purkey submits the following Response to Plaintiffs' Statement of Undisputed Facts (D.E. 39).

1.  Plaintiff James Thomas is a resident of Nashville, Tennessee. (Stipulation of Fact ¶ 1)

**RESPONSE:** ADMITTED.

2.  Plaintiff David Hixson is a resident of Nashville, Tennessee. (Stipulation of Fact ¶ 2)

**RESPONSE:** ADMITTED.

3.     Defendant David W. Purkey is the Commissioner of the Tennessee Department of Safety and Homeland Security.  In his official capacity, he has authority over all aspects of the Department's operations, including its suspension, revocation, and reinstatement of driver's licenses.  (Stipulation of Fact ¶ 3)

**RESPONSE:**  OBJECTION.  The statement above is compound in nature and therefore does not conform to Local Rule 56.01(b).  Moreover, the statement above addresses matters of both fact and law.  Statements of law are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp v. Western Express, Inc.*, 2014 WESTLAW 7357379 at *1 n.1 (M.D. Tenn. 2014).

Without waiving these Objections, Defendant ADMITS that he is the Commissioner of the Tennessee Department of Safety and Homeland Security, and that his duties are prescribed by the Tennessee Code.  Defendant further ADMITS that such duties include the suspension, revocation, and reinstatement of driver's licenses.

4.     In Tennessee, the sentence of a person convicted of a crime may include, in addition to or in lieu of imprisonment or probation, an obligation to pay restitution, fines, litigation taxes, and/or court costs (collectively, "Court Debt"). (Stipulation of Fact ¶ 4)

**RESPONSE:**  OBJECTION.  The statement above addresses matters of both fact and law.  Statements of law are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.  Defendant further OBJECTS to the term "Court Debt" as it is inaccurate.

Without waiving these Objections, Defendant ADMITS that -- as the factual circumstances of each criminal case dictate -- the sentence of a person convicted of a crime may include, in addition to or in lieu of imprisonment or probation, an obligation to pay restitution, fines, litigation taxes, and/or court costs.

5.     Restitution and fines are considered part of the criminal penalty. (Stipulation of Fact ¶ 5)

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that -- as a general matter -- fines are a form of criminal penalty, which are imposed by the trial court as part of the sentence.  *State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997).  Defendant further ADMITS that -- as a general matter -- restitution also is a form of criminal penalty.  *State v. Bottoms*, 87 S.W.3d 95, 106 (Tenn. Crim. App. 2001).

6.     Restitution and fines are not assessed in every case.  (Stipulation of Fact ¶ 6)

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that -- as the factual circumstances of each criminal case dictate -- the sentence of a person convicted of a crime may, or may not, include an assessment by the court of restitution and/or fines.

7.     Litigation taxes and court costs are not part of the criminal penalty.  (Stipulation of Fact ¶ 7)

**RESPONSE:** OBJECTION. The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that -- while assessed by the court as part of a sentence and judgment -- litigation taxes and court costs are not penal in nature. *See* Tenn. Code Ann. § 67-4-602(a) (addressing privilege tax in criminal cases) and § 40-25-104 (addressing costs adjudged in criminal cases).

8.      Litigation taxes and court costs are assessed in connection with every misdemeanor and felony conviction. Such taxes and court costs may, however, be waived upon a petition for, and finding of, indigency. (Stipulation of Fact ¶ 8)

**RESPONSE:** OBJECTION. The statement above is compound in nature and therefore does not conform to Local Rule 56.01(b). Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that "[t]here is levied a privilege tax on litigation instituted in this state, of twenty-nine dollars and fifty cents ($29.50) on all criminal charges, upon conviction or by order." Tenn. Code Ann. § 67-4-602(a). Defendant further ADMITS that "[a] defendant convicted of a criminal offense shall pay all the costs that have accrued in the cause." Tenn. Code Ann. § 40-25-123(a). Defendant further ADMITS that litigation taxes and court costs may be waived by the trial court for good cause, including a showing of indigency. Tenn. Code Ann. §§ 40-25-123(b), 40-25-129(a)(2).

4

9.      Restitution, litigation taxes, fines, and/or court costs can be imposed in the absence of a conviction if the prosecutor offers to dismiss charges "on costs" and the defendant accepts. (Stipulation of Fact ¶ 9)

**RESPONSE:**  OBJECTION.  The statement above is compound in nature and therefore does not conform to Local Rule 56.01(b).  Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See, e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.   Further, for the purpose of Rule 56, Fed. R. Civ. P., this fact is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

Without waiving these Objections, Defendant ADMITS that -- as the factual circumstances of each criminal case dictate -- restitution, litigation taxes, fines, and/or court costs can be imposed in the absence of a conviction if the prosecutor offers to dismiss charges "on costs" and the defendant accepts.

10.     Examples of court costs that can be imposed include filing fees, arrest fees, court security fees, fees for issuing subpoenas, fees for continuances, indigent defense fees, jail fees, and witness fees. (Stipulation of Fact ¶ 10)

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See, e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that -- as the factual circumstances of each criminal case dictate -- court costs with the sentencing court may assess include filing fees, arrest fees, court security fees, fees for issuing subpoenas, fees for continuances, indigent defense fees, jail fees, and witness fees.  *See* Tenn. Code Ann. §§ 40-25-133 and 40-25-104.

11.     Depending on factors such as the length of pretrial detention and the complexity of the matter, litigation taxes and court costs can range from about $200 at the low end to more than $10,000. (Stipulation of Fact ¶ 11)

**RESPONSE:**   OBJECTION.   For the purpose of Rule 56, Fed. R. Civ. P., this fact is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

Without waiving this Objection, Defendant ADMITS that -- as the factual circumstances of each criminal case dictate -- litigation taxes and court costs can range from about $200 at the low end to more than $10,000.

12.     Fines can range from $50 to multiple thousands of dollars (if imposed by jury or in a plea agreement).  (Stipulation of Fact ¶ 12)

**RESPONSE:**   OBJECTION.   The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Moreover, for the purpose of Rule 56, Fed. R. Civ. P., this assertion is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

Without waiving these Objections, Defendant ADMITS that -- as the factual circumstances of each criminal case dictate -- fines (which in all cases are imposed by the court, *see Blevins*, 968 S.W.2d at 895) can range from $50 to multiple thousands of dollars.

13.     Litigation taxes are imposed on defendants who are charged and tried (e.g., Tenn. Code Ann. § 67-4-602(a)) and include, among other things, amounts earmarked to support jail construction (e.g., id. § 67-4-601(b)(1)) and sheriff's department software (e.g., id. § 67-4-601(b)(7)(B)).  (Stipulation of Fact ¶ 13)

6

**RESPONSE:** OBJECTION. The statement above is compound in nature and therefore does not conform to Local Rule 56.01(b). The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Moreover, for the purpose of Rule 56, Fed. R. Civ. P., this assertion is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

Without waiving these Objections, Defendant ADMITS that "[t]here is levied a privilege tax on litigation instituted in this state, of twenty-nine dollars and fifty cents ($29.50) on all criminal charges, upon conviction or by order." Tenn. Code Ann. § 67-4-602(a). Defendant further ADMITS that "counties and municipalities . . . have authority to levy a local litigation tax . . .," Tenn. Code Ann. § 67-4-601(a), which -- if adopted -- "shall not exceed ten dollars ($10.00) per case" and "shall be used exclusively for the purposes of jail or workhouse construction, reconstruction or upgrading, or to retire debt, including principal and interest and related expenses, on such construction, reconstruction or upgrading or for courthouse renovation." Tenn. Code Ann. § 67-4-601(b)(1). Defendant further ADMITS that any local litigation tax adopted pursuant to Tenn. Code Ann. § 67-4-601(b)(1), "shall only be effective until such time as all expenses of the construction, reconstruction, upgrading or renovation project has been paid, or until such time as the debt for such project has been retired." Tenn. Code Ann. § 67-4-601(b)(2). Defendant further ADMITS that, pursuant to Tenn. Code Ann. §§ 67-4-601(b)(5) and/or (b)(6), a county legislative body may adopt "a privilege tax on litigation in . . . criminal cases" which "may be levied in an amount not to exceed twenty-five dollars ($25.00) per case," and that such privilege tax "may . . . use those funds . . . for the purpose of obtaining and maintaining software and hardware associated with collecting, receiving and maintaining records for law enforcement agencies, including county sheriff offices . . . ." Tenn. Code Ann. § 67-4-601(b)(7)(B)(i). Defendant further ADMITS that

[a]ny use of a privilege tax for purposes under this subdivision (b)(7)(B) shall only be permitted until such time as all expenses for the purchase, installation, training, maintenance and associates costs for the project . . . have been paid, or until such time as the debt for that project has been retired." Tenn. Code Ann. § 67-4-601(b)(7)(B)(ii).

14.     Prior to 2011, Court Debt, whether or not considered part of the penalty in the underlying criminal case, could only be collected "in the same manner as a judgment in a civil action." (Stipulation of Fact ¶ 14).

**RESPONSE:** OBJECTION.  Use of the phrase "Court Debt" is inaccurate.  Moreover, the statement above is compound in nature and therefore does not conform to Local Rule 56.01(b). Further, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.  Moreover, for the purpose of Rule 56, Fed. R. Civ. P., this assertion is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

Without waiving these Objections, Defendant ADMITS that prior to 2011, restitution, litigation taxes, fines, and/or court costs, whether or not considered part of the penalty in the underlying criminal case, could only be collected "in the same manner as a judgment in a civil action." Tenn. Code Ann. § 40-24-105 (2010 edition).

15.     Tennessee law provides that restitution, fees and fines may be collected in the same manner as any other civil judgment.  (Stipulation of Fact ¶ 15)

**RESPONSE:** OBJECTION.  The statement above is compound in nature and therefore does not conform to Local Rule 56.01(b).  The statement above addresses matters of law, which

are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that "[u]nless discharged by payment or service of imprisonment in default of a fine, a fine may be collected in the same manner as a judgment in a civil action. The trial court may also enforce all orders assessing any fine remaining in default by contempt upon a finding by the court that the defendant has the present ability to pay the fine and willfully refuses to pay. Costs and litigation taxes due may be collected in the same manner as a judgment in a civil action, but shall not be deemed part of the penalty, and no person shall be imprisoned under this section in default of payment of costs or litigation taxes." Tenn. Code Ann. § 40-24-105(a).

16.     In 2006, on joint request of the District Attorney and Public Defender of Clarksville, the Tennessee Attorney General issued Opinion No. 06-135 (available at https://www.tn.gov/assets/entities/attorneygeneral/opinions/op06-135.pdf). (Exhibit 1) The Opinion held, inter alia, that the procedures available for collecting civil judgments -- i.e., execution, garnishment, and judgment liens -- were the exclusive means to collect Court Debt in criminal proceedings. (Stipulation of Fact ¶ 16)

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement above is compound in nature and therefore does not conform to Local Rule 56.01(b). Further, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Finally, for the purpose of Rule 56, Fed. R. Civ. P., this assertion is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

Without waiving these Objections, Defendant ADMITS that, on August 21, 2006, the Office of the Attorney General issued Opinion No. 06-135 which stated in part:

- The writ of scire facias is not a statutorily authorized procedure for the collection of litigation taxes, court costs, and fines. Litigation taxes, court costs, and fines "may be collected in the same manner as a judgment in a civil action." Tenn. Code Ann. § 40-24-105. Money judgments may only be enforced by execution, garnishment, and judgment liens. Tenn. R. Civ. P. 69; Tenn. Code Ann. § 26-1-101; *Kuykendall v. Wheeler*, 890 S.W.2d 785 (Tenn. 1994);

- Contempt is not a statutorily authorized procedure for the collection of litigation taxes, court costs, and fines. Litigation taxes, court costs, and fines "may be collected in the same manner as a judgment in a civil action." Tenn. Code Ann. § 40-24-105. Money judgments may only be enforced by execution, garnishment, and judgment liens. Tenn. R. Civ. P. 69; Tenn. Code Ann. § 26-1-101; *Kuykendall v. Wheeler*, 890 S.W.2d 785 (Tenn. 1994);

- It is unlawful to imprison a criminal defendant for non-payment of court costs and litigation taxes. Tenn. Code Ann. § 40-24-105(a);

- It is unlawful to imprison a criminal defendant for non-payment of fines without a finding that the defendant had the means to pay the fine and willfully failed to pay the fine. Tenn. Code Ann. § 40-24-104; and

- The allocation of money according to Tenn. Code Ann. § 40-24-105 affects neither the defendant's obligation to pay a fine nor the State's authority to punish the defendant for failing to do so pursuant to Tenn. Code Ann. § 40-24-104.

By way of further response, Defendant ADMITS that "[t]he Attorney General is not a judicial officer." *Rice v. Family Planning Clinic for Reproductive Health*, 1993 WESTLAW 101862 at *5 (Tenn. App. 1993) (Koch, J., concurring). Thus, opinions from the Office of the Attorney General are "in no way binding" upon a court, nor should be considered "controlling authority." *Beacon4, LLC v. I & L Investments, LLC*, 514 S.W.3d 153, 173 (Tenn. App. 2016) (citations omitted).

17. In 2011, the Tennessee legislature enacted Tenn. Code Ann. § 40-24-105(b) (the "Statute"), which provides in subsection (1) that:

10

A license issued under title 55 for any operator or chauffeur shall be revoked by the commissioner of safety if the licensee has not paid all litigation taxes, court costs, and fines assessed as a result of disposition of any offense under the criminal laws of this state within one (1) year of the date of disposition of the offense. The license shall remain revoked until such time as the person whose license has been revoked provides proof to the commissioner of safety that all litigation taxes, court costs, and fines have been paid. (Stipulation of Fact ¶ 17)

**RESPONSE:** OBJECTION. The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving the Objection, ADMITTED.


18.     As of 2006, contempt proceedings were not authorized for the collection of Court Debt arising from closed criminal cases. (Stipulation of Fact ¶ 18; Exhibit 1)

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Finally, for the purpose of Rule 56, Fed. R. Civ. P., this assertion is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

Without waiving these Objections, Defendant ADMITS that, prior to 2007, Tenn. Code Ann. § 40-24-105 did not contain any reference to contempt proceedings in respect of unpaid fines.


19.     In 2007, the General Assembly authorized contempt proceedings with respect to unpaid fines, expressly subject to "a finding by the court that the defendant has the present ability to pay the fine and willfully refuses to do so." 2007 Tenn. Sess. Laws, Pub. C.167 (codified at Tenn. Code Ann. § 40-25-105(a), (d)). (Stipulation of Fact ¶ 19)

**RESPONSE:** OBJECTION. The statement above is compound in nature and therefore does not conform to Local Rule 56.01(b). The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1

n.1. Further, for the purpose of Rule 56, Fed. R. Civ. P., this assertion is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

Without waiving these Objections, Defendant ADMITS that Public Chapter 167 of the 2007 Tenn. Sess. Laws (codified at Tenn. Code Ann. § 40-25-105(a), (d)) provides:

> SECTION 1. Tennessee Code Annotated, Section 40-24-105, is amended by adding the following between the first sentence and second sentence of subsection (a):
>
> > The trial court may also enforce all orders assessing any fine remaining in default by contempt upon a finding by the court that the defendant has the present ability to pay the fine and willfully refuses to pay.
>
> SECTION 2. Tennessee Code Annotated, Section 40-24-105, is amended by deleting the period (.) at the end of the first sentence of subsection (c) [now subsection (d)] and substituting instead the following:
>
> > by the trial court by contempt upon a finding by the court that the defendant has the present ability to pay the fine and willfully refuses to pay.

20. It is unlawful to jail a person for failure to pay Court Debt without a finding that the person had the means to pay and that the non-payment was willful. (Exhibit 1, ¶¶ 3, 4)

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement above is compound in nature and therefore does not conform to Local Rule 56.01(b). Further, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Finally, for the purpose of Rule 56, Fed. R. Civ. P., this assertion is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

Without waiving these Objections, Defendant ADMITS that, on August 21, 2006, the Office of the Attorney General issued Opinion No. 06-135, which stated in part:

- The writ of scire facias is not a statutorily authorized procedure for the collection of litigation taxes, court costs, and fines. Litigation taxes, court costs, and fines

"may be collected in the same manner as a judgment in a civil action." Tenn. Code Ann. § 40-24-105. Money judgments may only be enforced by execution, garnishment, and judgment liens. Tenn. R. Civ. P. 69; Tenn. Code Ann. § 26-1-101; *Kuykendall v. Wheeler*, 890 S.W.2d 785 (Tenn. 1994);

- Contempt is not a statutorily authorized procedure for the collection of litigation taxes, court costs, and fines. Litigation taxes, court costs, and fines "may be collected in the same manner as a judgment in a civil action." Tenn. Code Ann. § 40-24-105. Money judgments may only be enforced by execution, garnishment, and judgment liens. Tenn. R. Civ. P. 69; Tenn. Code Ann. § 26-1-101; *Kuykendall v. Wheeler*, 890 S.W.2d 785 (Tenn. 1994);

- It is unlawful to imprison a criminal defendant for non-payment of court costs and litigation taxes. Tenn. Code Ann. § 40-24-105(a);

- It is unlawful to imprison a criminal defendant for non-payment of fines without a finding that the defendant had the means to pay the fine and willfully failed to pay the fine. Tenn. Code Ann. § 40-24-104; and

- The allocation of money according to Tenn. Code Ann. § 40-24-105 affects neither the defendant's obligation to pay a fine nor the State's authority to punish the defendant for failing to do so pursuant to Tenn. Code Ann. § 40-24-104.

By way of further response, Defendant ADMITS that "[t]he Attorney General is not a judicial officer." *Rice v. Family Planning Clinic for Reproductive Health*, 1993 WESTLAW 101862 at *5 (Tenn. App. 1993) (Koch, J., concurring). Thus, opinions from the Office of the Attorney General are "in no way binding" upon a court, nor should be considered "controlling authority." *Beacon4, LLC v. I & L Investments, LLC*, 514 S.W.3d 153, 173 (Tenn. App. 2016) (citations omitted).

21. The General Assembly that passed the Statute did so to remedy a perceived inability to collect Court Debt. (See Tenn. Gen Assemb. H.B. 1877, Remarks by Rep. Gotto (sponsor), House Finance Ways and Means Committee, May 17, 2011 ("Gotto Remarks"), at video time tick

13

16:40 (video available at "Video" tab at http://wapp.capitol.tn.gov/apps/BillInfo/default.aspx?BillNumber=HB1877&ga=107))

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement above constitutes inadmissible hearsay, and is inappropriate under Local Rule 56.01(b). *See Bowman v. Skyview Apartments*, 2008 WL 4449922 at *3 (M.D. Tenn. 2008) (citing *Weberg v. Franks*, 229 F.3d 514, 526 n. 13 (6th Cir. 2000)). *See also Sperle v. Mich. Dept. of Corr.*, 297 F.3d 483, 495 (6th Cir. 2002) ("[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact."). Finally, the statement above is IMMATERIAL. "Where no ambiguity in the act exists, comments of legislators or even sponsors of the legislation before its passage cannot be effective to change the clear meaning of the act." *Saturn Corp. v. Johnson*, 197 S.W.3d 273, 276 (Tenn. App. 2006). *Accord BellSouth Telecommunications, Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. App. 1997) ("Courts consult legislative history not to delve into the personal, subjective motives of individual legislators, but rather to ascertain the meaning of the words in the statute. The subjective beliefs of legislators can never substitute for what was, in fact, enacted. There is a distinction between what the legislature intended to say in the law and what various legislators, as individuals, expected or hoped the consequences of the law would be."); *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 392 (6th Cir.), *cert. denied sub nom.*, 137 S. Ct. 199 (2016) ("If the language of the statute is clear, then the inquiry is complete, and the court should look no further. Only if the statute is inescapably ambiguous should a court look to other persuasive authority -- such as legislative history -- in an attempt to discern legislative meaning"; internal quotation and citations omitted).

14

22.     The Statute "has nothing to do with public safety"; it is "not a revenue generator" but "just a way to collect revenue that is owed the tax payers of this State." (Gotto Remarks at 28:59, 30:24).

**RESPONSE:**  OBJECTION.  The statement above constitutes inadmissible hearsay, and is inappropriate under Local Rule 56.01(b).  *See Bowman*, 2008 WL 4449922 at *3.  *See also Sperle*, 297 F.3d at 495.  Moreover, the statement above is IMMATERIAL.  *See Saturn Corp.*, 197 S.W.3d at 276.  *Accord BellSouth Telecommunications*, 972 S.W.2d at 673; *Rote*, 816 F.3d at 392.

23.     Felony cases are heard in each county's circuit or criminal courts of the 31 Judicial Districts and misdemeanors may be heard in the general sessions, circuit or criminal courts. (Stipulation of Fact ¶ 20)

**RESPONSE:**  OBJECTION.  The statement above is compound in nature and therefore does not conform to Local Rule 56.01(b).  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, ADMITTED.

24.     The clerk of the circuit or criminal court ("Court Clerk") is responsible for tracking and collecting Court Debt.  (Stipulation of Fact ¶ 22)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.  Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that the clerk of the circuit or criminal court is responsible for tracking and collecting restitution, litigation taxes, fines, and/or court costs.

25.     Under the Statute, the Court Clerk "shall" notify the State Commissioner of Safety when a person has any Court Debt that remains unpaid after one year from the date of disposition of the offense. Tenn. Code Ann. § 40-24-105(b)(2).

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that the current version of Tenn. Code Ann. § 40-24-105(b)(2), states:

> The clerk of the court ordering disposition of an offense shall notify the commissioner of safety when an offender has litigation taxes, court costs, and fines that remain unpaid after one (1) year from the disposition of the offense.  Such notification shall take place within thirty (30) days of the expiration of the one-year period or as soon as practicable.  The commissioner of safety shall not refuse to revoke a license issued under title 55 on grounds that notification was not received within the thirty-day period specified in this subdivision (b)(2).

26.     Upon receiving notification from the Court Clerk that a person has outstanding Court Debt, the Commissioner of Safety "shall" revoke that person's license. Tenn. Code Ann § 40-24-105(b)(1).

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.  Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that the current version of Tenn. Code Ann. § 40-24-105(b)(1), states:

A license issued under title 55 for any operator or chauffeur shall be revoked by the commissioner of safety if the licensee has not paid all litigation taxes, court costs, and fines assessed as a result of disposition of any offense under the criminal laws of this state within one (1) year of the date of disposition of the offense. The license shall remain revoked until such time as the person whose license has been revoked provides proof to the commissioner of safety that all litigation taxes, court costs, and fines have been paid.

27. The license "shall" remain revoked until such time as the person provides proof to the Commissioner of Safety that he or she has paid all outstanding Court Debt. *Id.*

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that the current version of Tenn. Code Ann. § 40-24-105(b)(1), states:

A license issued under title 55 for any operator or chauffeur shall be revoked by the commissioner of safety if the licensee has not paid all litigation taxes, court costs, and fines assessed as a result of disposition of any offense under the criminal laws of this state within one (1) year of the date of disposition of the offense. The license shall remain revoked until such time as the person whose license has been revoked provides proof to the commissioner of safety that all litigation taxes, court costs, and fines have been paid.

28. Upon receiving information from a Court Clerk that a person has Court Debt that has been unpaid for a year, Defendant Purkey's subordinates in the Department of Safety immediately revoke the person's driver's license. (See Exhibit 2 (where statute provides for mandatory revocation of a driver's license, DoS does so immediately and without prior notice to the driver; Thomas Dec. ¶¶ 8, 9; Hixson Dec. ¶¶ 4, 5; Stipulation of Fact ¶ 29))

17

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate; accordingly, DENIED as stated.

By way of further response, Defendant ADMITS that Plaintiff's Exhibit 2 accurately describes, in general, the procedure of the Department of Safety regarding the suspension of a driver's license, to wit:

> [t]he Department sends out proposed notices of suspension or revocation the day information is received from the court. Depending on the offense, we will first send out a proposed suspension letter giving the individual 30 days from the date on the letter to comply to avoid a suspension or revocation. If the individual does not comply within the time allotted then the license is suspended and then a second letter notifying the individual of the suspension is sent out.
>
> If the offense committed requires by statute a mandatory suspension or revocation then the license is suspended or revoked the same day that the Department receives the information and a letter notifying the individual of suspension/revocation is generated and sent out. The Department does not analyze an individual's ability to pay fines related to a suspension.

Defendant also ADMITS that -- for revocations pursuant to Tenn. Code Ann. § 40-24-105(b) -- the Department revokes a person's driver's license on the same day that it receives notification of non-payment from the court. However, while revocation is effective as of the date that notification is set to the driver by the Department, the Department does not change the status of the driver's license for a period of 10 days in order to allow the driver to receive notification from the Department. *See* Declaration of Randi Cortazar (filed contemporaneously) at ¶ 2.

29.     Before any suspended or revoked license can be reinstated, a reinstatement fee is required. Tenn. Code Ann. § 55-12-129. (Stipulation of Fact ¶ 24)

**RESPONSE:** OBJECTION. The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See, e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

18

Without waiving this Objection, Defendant ADMITS that Tenn. Code Ann. § 55-12-129 addresses the imposition of a reinstatement fee, which under some circumstances is mandatory, under some circumstances may not be mandatory if "otherwise provided by law," and under some circumstances may be subject to an "installment payment plan."

30.    The only payment plans for reinstatement fees offered by the Tennessee Department of Safety under Defendant Purkey are for people who owe more than $200 in reinstatement fees, Tenn. Comp. R. & Regs. 1340-2-5, as to which:

a.    The payment plans require a down payment of $200 and a processing fee of $25;

b.    Payments must be made in the amount of at least $300 every quarter, and the entire amount must be paid within two years;

c.    Debtors who default on payment plans for any reason -- including unexpected financial hardship -- lose their licenses and can never enter into another payment plan again. (Stipulation of Fact ¶ 25)

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that a true and correct copy of Tenn. Comp. R. & Regs. 1340-2-5 is attached hereto as *Defendant's Exhibit 1*.

31.    An individual's "license" may be "revoked" under the Statute even if the individual has never had a driver's license: upon the Court Clerk's notification that the person has Court Debt that has been unpaid for one year, the Commissioner assigns a license number to the individual and notes the license as "revoked."  (Stipulation of Fact ¶ 26)

**RESPONSE:** OBJECTION. The statement is vague and ambiguous with regard to the use of the phrase "the Statute" without specificity. Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Moreover, for the purpose of Rule 56, Fed. R. Civ. P., this assertion is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

Without waiving these Objections, and assuming the phrase "the Statute" refers to Tenn. Code Ann. § 40-24-105(b), as referenced at paragraph 3 of Plaintiff's Complaint, Defendant ADMITS that an individual's "license" may be "revoked" under section 105(b) even if the individual has never had a driver's license: upon the Court Clerk's notification that the person has Court Debt that has been unpaid for one year, the Commissioner assigns a license number to the individual and notes the license as "revoked." *See* Tenn. Code Ann. § 55-50-102(48) (addressing revocation of a person's "license *or* privilege").

32. If a person whose license has been suspended or revoked later applies for a license, the Commissioner may not issue a license until that person has paid all outstanding Court Debt and a reinstatement fee. Tenn. Code Ann. § 55-50-303(a)(2). (Stipulation of Fact ¶ 27)

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that the current version of Tenn. Code Ann. § 55-50-303(a)(2), states:

> The department shall not issue any license under this chapter . . . [t]o any person whose license has been suspended, cancelled or revoked, during suspension, cancellation or revocation and not until the person has complied with all requirements for reinstatement.

33.     The Statute does not require the Court Clerk or the Commissioner of Safety to send pre-revocation notices to the people whose licenses will be revoked for failure to pay their Court Debt.  (Stipulation of Fact ¶ 28)

**RESPONSE:**  OBJECTION.  The statement is vague and ambiguous with regard to the use of the phrase "the Statute" without specificity.  Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, and assuming the phrase "the Statute" refers to Tenn. Code Ann. § 40-24-105(b), as referenced at paragraph 3 of Plaintiff's Complaint, Defendant ADMITS that the statute states:

(1)  A license issued under title 55 for any operator or chauffeur shall be revoked by the commissioner of safety if the licensee has not paid all litigation taxes, court costs, and fines assessed as a result of disposition of any offense under the criminal laws of this state within one (1) year of the date of disposition of the offense.  The license shall remain revoked until such time as the person whose license has been revoked provides proof to the commissioner of safety that all litigation taxes, court costs, and fines have been paid.

(2) The clerk of the court ordering disposition of an offense shall notify the commissioner of safety when an offender has litigation taxes, court costs, and fines that remain unpaid after one (1) year from the disposition of the offense. Such notification shall take place within thirty (30) days of the expiration of the one-year period or as soon as practicable.  The commissioner of safety shall not refuse to revoke a license issued under title 55 on grounds that notification was not received within the thirty-day period specified in this subdivision (b)(2).

(3)     (A) A person who is unable to pay any portion of assessed litigation taxes, court costs, and fines may apply one (1) time to the court having original jurisdiction over the offense for an order staying the revocation of the license issued under title 55. An order to stay the revocation of the license shall be granted if the court finds that the person would experience extreme hardship from the revocation of the license and that no other means of transportation are reasonably available to the person. Grounds for finding of extreme hardship are limited to travel necessary for:

(i) Employment;

(ii) Serious illness of the person or an immediate family member; or

(iii) Participation in a recovery court, which includes drug courts under the Drug Court Treatment Act of 2003, compiled in title 16, chapter 22, part 1; DUI courts; mental health courts; and veterans treatment courts.

(B) The offender seeking a hardship exception shall make application to the court in the form of a sworn affidavit stating with particularity the grounds and circumstances of hardship. The court may enter a one-time stay for a period of not longer than one hundred and eighty (180) days. The court clerk shall promptly notify the commissioner of safety of the issuance or termination of any stay of revocation. The commissioner of safety shall not revoke any license under this subsection (b) while the stay is in effect.

(4) A person who is unable to pay all of the assessed litigation taxes, court costs, and fines but is able to pay some of them on a monthly or weekly basis may apply to the court having original jurisdiction over the offense for an order setting up a payment plan for such taxes, costs and fines. If the person and court agree to such a weekly or monthly payment plan, the court shall so order and such order shall have the effect of staying the revocation of the license pursuant to this subsection (b). The order staying the revocation of license shall remain in effect for as long as the person is current and in compliance with the payment plan. If the person fails to make payments according to the plan for three (3) consecutive months without good cause, the court may revoke the order and notify the clerk. The court clerk shall promptly notify the commissioner of safety of the issuance or termination of any stay of revocation. The commissioner of safety shall not revoke pursuant to this subsection (b) while the stay is in effect.

(5) The revocation provided in this subsection (b) is cumulative and does not limit or otherwise affect any license revocation pursuant to title 39, title 55, or any other law.

(6) Nothing in this subsection (b) shall be construed to apply to any license issued pursuant to title 55, chapter 17.

Defendant further ADMITS that Tenn. Code Ann. § 40-24-105(b) does not address notification to driver's license holders, and neither requires nor prohibits such notification.

34.     The Commissioner of Safety does not in fact send pre-revocation notices to the people whose licenses will be revoked for failure to pay their Court Debt. (Stipulation of Fact ¶ 29)

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate; accordingly, DENIED as stated.

By way of further response, Defendant ADMITS that Plaintiff's Exhibit 2 accurately describes, in general, the procedure of the Department of Safety regarding the suspension of a driver's license, to wit:

> [t]he Department sends out proposed notices of suspension or revocation the day information is received from the court. Depending on the offense, we will first send out a proposed suspension letter giving the individual 30 days from the date on the letter to comply to avoid a suspension or revocation. If the individual does not comply within the time allotted then the license is suspended and then a second letter notifying the individual of the suspension is sent out.
>
> If the offense committed requires by statute a mandatory suspension or revocation then the license is suspended or revoked the same day that the Department receives the information and a letter notifying the individual of suspension/revocation is generated and sent out. The Department does not analyze an individual's ability to pay fines related to a suspension.

Defendant further ADMITS that the Department does not send pre-revocation notices to the people whose licenses will be revoked pursuant to Tenn. Code. Ann. § 40-24-105(b) for failure to pay their restitution, litigation taxes, fines, and/or court costs.

35.     The Statute does not provide for a hearing at which a person may challenge the revocation on the basis that he or she is unable to pay the Court Debt. (Stipulation of Fact ¶ 30)

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement is vague and ambiguous with regard to the use of the phrase "the Statute" without specificity. Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, and assuming the phrase "the Statute" refers to Tenn. Code Ann. § 40-24-105(b), as referenced at paragraph 3 of Plaintiff's Complaint, Defendant ADMITS that the statute states:

(1)  A license issued under title 55 for any operator or chauffeur shall be revoked by the commissioner of safety if the licensee has not paid all litigation taxes, court costs, and fines assessed as a result of disposition of any offense under the criminal laws of this state within one (1) year of the date of disposition of the offense.  The license shall remain revoked until such time as the person whose license has been revoked provides proof to the commissioner of safety that all litigation taxes, court costs, and fines have been paid.

(2) The clerk of the court ordering disposition of an offense shall notify the commissioner of safety when an offender has litigation taxes, court costs, and fines that remain unpaid after one (1) year from the disposition of the offense. Such notification shall take place within thirty (30) days of the expiration of the one-year period or as soon as practicable.  The commissioner of safety shall not refuse to revoke a license issued under title 55 on grounds that notification was not received within the thirty-day period specified in this subdivision (b)(2).

(3)      (A) A person who is unable to pay any portion of assessed litigation taxes, court costs, and fines may apply one (1) time to the court having original jurisdiction over the offense for an order staying the revocation of the license issued under title 55.  An order to stay the revocation of the license shall be granted if the court finds that the person would experience extreme hardship from the revocation of the license and that no other means of transportation are reasonably available to the person.  Grounds for finding of extreme hardship are limited to travel necessary for:

> (i) Employment;

> (ii) Serious illness of the person or an immediate family member; or

> (iii) Participation in a recovery court, which includes drug courts under the Drug Court Treatment Act of 2003, compiled in title 16, chapter 22, part 1; DUI courts; mental health courts; and veterans treatment courts.

(B) The offender seeking a hardship exception shall make application to the court in the form of a sworn affidavit stating with particularity the grounds and circumstances of hardship.  The court may enter a one-time stay for a period of not longer than one hundred and eighty (180) days. The court clerk shall promptly notify the commissioner of safety of the issuance or termination of any stay of revocation. The commissioner of safety shall not revoke any license under this subsection (b) while the stay is in effect.

(4) A person who is unable to pay all of the assessed litigation taxes, court costs, and fines but is able to pay some of them on a monthly or weekly basis may apply to the court having original jurisdiction over the offense for an order setting up a payment plan for such taxes, costs and fines. If the person and court agree to such a weekly or monthly payment plan, the court shall so order and such order shall have the effect of staying the revocation of the license pursuant to this subsection (b). The order staying the revocation of license shall remain in effect for as long as the person is current and in compliance with the payment plan. If the person fails to make payments according to the plan for three (3) consecutive months without good cause, the court may revoke the order and notify the clerk. The court clerk shall promptly notify the commissioner of safety of the issuance or termination of any stay of revocation. The commissioner of safety shall not revoke pursuant to this subsection (b) while the stay is in effect.

(5) The revocation provided in this subsection (b) is cumulative and does not limit or otherwise affect any license revocation pursuant to title 39, title 55, or any other law.

(6) Nothing in this subsection (b) shall be construed to apply to any license issued pursuant to title 55, chapter 17.

Defendant further ADMITS that Tenn. Code Ann. § 40-24-105(b) does not address hearings by the Commissioner or his designee. Defendant further avers a criminal defendant has the ability to go back to the sentencing court and seek relief from whatever monetary assessment he or she has been ordered to pay. *See* Tenn. Code Ann. §§ 40-24-102, 40-24-104(a), 40-25-123(b), 40-25-129(a)(2), 40-35-304(f), and 67-4-605(c).

36.     The Statute requires automatic and mandatory revocation without consideration of ability to pay Court Debt and does not permit the Commissioner of Safety to consider ability to pay Court Debt before revoking driver's licenses. (Stipulation of Fact ¶ 31)

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement is vague and ambiguous with regard to the use of the phrase "the Statute" without specificity. Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See, e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, and assuming the phrase "the Statute" refers to Tenn. Code Ann. § 40-24-105(b), as referenced at paragraph 3 of Plaintiff's Complaint, DENIED as stated. Defendant ADMITS that section 105(b)(1) states that a driver's license "shall be revoked by the commissioner of safety if the licensee has not paid all litigation taxes, court costs, and fines assessed as a result of disposition of any offense under the criminal laws of this state within one (1) year of the date of disposition of the offense." Defendant further ADMITS that section 105(b) does not permit the Commissioner of Safety to consider the ability of licensees to pay restitution, litigation taxes, fines, and/or court costs before revoking driver's licenses. Such considerations are reserved for the courts pursuant to section 105(b) and other applicable statutes. *See* Tenn. Code Ann. §§ 40-24-102, 40-24-104(a), 40-25-123(b), 40-25-129(a)(2), 40-35-304(f), and 67-4-605(c).

37.　　A person who "is able to pay some of" the "assessed litigation taxes, court costs, and fines," § 40-24-105(b)(4), may avoid such revocation by entering into a payment plan through the court and thereafter adhering to the plan. (Stipulation of Fact ¶ 31)

**RESPONSE:** OBJECTION. The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See, e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that section 105(b)(4) states:

> A person who is unable to pay all of the assessed litigation taxes, court costs, and fines but is able to pay some of them on a monthly or weekly basis may apply to the court having original jurisdiction over the offense for an order setting up a payment plan for such taxes, costs and fines. If the person and court agree to such a weekly or monthly payment plan, the court shall so order and such order shall have the effect of staying the revocation of the license pursuant to this subsection (b). The order staying the revocation of license shall remain in effect for as long as the person is current and in compliance with the payment plan. If the person fails to make payments according to the plan for three (3) consecutive months without good cause, the court may revoke the order and notify the clerk. The court clerk shall promptly notify the commissioner of safety of the issuance or termination of

any stay of revocation. The commissioner of safety shall not revoke pursuant to this subsection (b) while the stay is in effect.

38.    Defendant Purkey and his subordinates in the Department of Safety do not in fact consider the debtors' ability to pay their Court Debt before revoking their driver's licenses. (Stipulation of Fact ¶ 32)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.

Without waiving this Objection, Defendant ADMITS that the Department does not consider the debtors' ability to pay restitution, litigation taxes, fines, and/or court costs before revoking their driver's licenses.

39.    The General Assembly amended the Statute in 2017 ("2017 Amendment").  2017 Tenn. Sess. Laws Pub. C.412 (the "2017 Amendment").  (Stipulation of Fact ¶ 33)

**RESPONSE:**  OBJECTION.  The statement is vague and ambiguous with regard to the use of the phrase "the Statute" without specificity.  Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, and assuming the phrase "the Statute" refers to Tenn. Code Ann. § 40-24-105(b), as referenced at paragraph 3 of Plaintiff's Complaint, Defendant ADMITS that Tenn. Pub. Ch. 412 (a true and correct copy of which is attached as *Defendant's Exhibit 2*) was passed by the General Assembly and signed into law on May 18, 2017.  Defendant further ADMITS that Tenn. Pub. Ch. 412 is effective January 1, 2018.

40.     The 2017 Amendment is effective January 1, 2018.  (Stipulation of Fact ¶ 34)

**RESPONSE:**  OBJECTION. The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that 2017 Tenn. Pub. Ch. 412 (a true and correct copy of which is attached as *Defendant's Exhibit 2*) was passed by the General Assembly and signed into law on May 18, 2017.  Defendant further ADMITS that Tenn. Pub. Ch. 412 is effective January 1, 2018.

41.     In passing the 2017 Amendment, the General Assembly recognized that "[t]he people that are not paying the fees are people that are not avoiding them simply to avoid the fees. Most of the people who are not paying the fees and fines and what have you are people who simply don't have the means." (See Remarks of Senator Dickerson (sponsor) with respect to Amendment No. 1, which made the bill ("Dickerson Remarks") in the Tennessee General Assembly video identified at Stipulation of Fact ¶ 35)

**RESPONSE:**  OBJECTION.  The statement above constitutes inadmissible hearsay, and is inappropriate under Local Rule 56.01(b).  *See Bowman*, 2008 WL 4449922 at *3.  *See also Sperle*, 297 F.3d at 495.  Moreover, the statement above is IMMATERIAL.  *See Saturn Corp.*, 197 S.W.3d at 276.  *Accord BellSouth Telecommunications*, 972 S.W.2d at 673; *Rote*, 816 F.3d at 392.

42.     The General Assembly further recognized that the Statute was counterproductive in its stated purpose of collecting Court Debt (Dickerson Remarks):

"When the bill was passed originally, the one that this is sort of updating, it was thought, well, if we hold their driver's license back it will give them a carrot to encourage them to pay. Really what it does is it puts them even further behind the eight ball. Now they don't have a driver's license, and if they drive to work they may be subject to be stopped for driving without a license or they may simply not go to work."

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement above constitutes inadmissible hearsay, and is inappropriate under Local Rule 56.01(b). *See Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495. Finally, the statement above is IMMATERIAL. *See Saturn Corp.*, 197 S.W.3d at 276. *Accord BellSouth Telecommunications*, 972 S.W.2d at 673; *Rote*, 816 F.3d at 392.

43.     The General Assembly further recognized that the Statute failed in its stated purpose of collecting Court Debt (Dickerson Remarks):

"In the aggregate, I think the court clerks throughout the state, and there may be exceptions county by county or jurisdiction by jurisdiction, what they've seen is actually a decrease in some of these fees . . . ."

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement above constitutes inadmissible hearsay, and is inappropriate under Local Rule 56.01(b). *See Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495. Finally, the statement above is IMMATERIAL. *See Saturn Corp.*, 197 S.W.3d at 276. *Accord BellSouth Telecommunications*, 972 S.W.2d at 673; *Rote*, 816 F.3d at 392.

44.     Before the 2017 Amendment, the Statute's "hardship" provisions provided only for a single, six-month stay of revocation, and for only "extreme hardship." "Grounds for finding of extreme hardship" were limited to "travel necessary for: (i) Employment; or (ii) Serious illness of the person or an immediate family member." Tenn. Code Ann. § 40-24-105(b)(3). (*See*

Stipulation of Fact Exhibit 1 (comparison of subsections (b)(3) and (b)(4) before and after 2017

Amendment))

**RESPONSE:**   OBJECTION. The statement above addresses matters of law, which are

inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that, as currently effective, Tenn.

Code Ann. § 40-24-105(b)(3) states:

> (3)      (A) A person who is unable to pay any portion of assessed litigation taxes,
> court costs, and fines may apply one (1) time to the court having original
> jurisdiction over the offense for an order staying the revocation of the license issued
> under title 55. An order to stay the revocation of the license shall be granted if the
> court finds that the person would experience extreme hardship from the revocation
> of the license and that no other means of transportation are reasonably available to
> the person.  Grounds for finding of extreme hardship are limited to travel necessary
> for:

>> (i) Employment;

>> (ii) Serious illness of the person or an immediate family member; or

>> (iii) Participation in a recovery court, which includes drug courts
>> under the Drug Court Treatment Act of 2003, compiled in title 16,
>> chapter 22, part 1; DUI courts; mental health courts; and veterans
>> treatment courts.

> (B) The offender seeking a hardship exception shall make application to the
> court in the form of a sworn affidavit stating with particularity the grounds and
> circumstances of hardship.  The court may enter a one-time stay for a period of not
> longer than one hundred and eighty (180) days. The court clerk shall promptly
> notify the commissioner of safety of the issuance or termination of any stay of
> revocation. The commissioner of safety shall not revoke any license under this
> subsection (b) while the stay is in effect.

45.      The 2017 Amendment deleted the word "extreme" from the hardship provision and

added additional grounds for finding hardship, including school, religious worship, attendance at

a recovery court, and "other reasons or destinations as determined by the court." (*See* Stipulation

of Fact Exhibit 1)

**RESPONSE:** OBJECTION. The statement above is compound in nature and therefore does not conform to Local Rule 56.01(b). Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that Section 1 of 2017 Tenn. Pub. Ch. 412 states:

> Tennessee Code Annotated, Section 40-24-105(b)(3)(A), is amended by deleting the subdivision and substituting instead the following:
>
>> A person who is unable to pay any portion of assessed litigation taxes, court costs, and fines may apply to the court having original jurisdiction over the offense for an order staying the revocation of the license issued under title 55. An order to stay the revocation of the license shall be granted if the court finds that the person would experience hardship from the revocation of the license and that other means of transportation are not readily available to the person. Grounds for finding of hardship are limited to travel necessary for:
>>
>> (i) Employment;
>>
>> (ii) School;
>>
>> (iii) Religious worship;
>>
>> (iv) Participation in a recovery court, which includes drug courts under the Drug Court Treatment Act of 2003, compiled in title 16, chapter 22; DUI courts; mental health courts; and veterans treatment courts;
>>
>> (v) Serious illness of the person or an immediate family member; or
>>
>> (vi) Other reasons or destination as determined by the court.

46. The hardship stay as it existed prior to the 2017 Amendment did not provide relief to people who could not work because of, for example, a disability or childcare responsibilities but who nevertheless needed to drive to buy groceries, to go to church, and for other fundamental aspects of daily life. (*See* Stipulation of Fact Exhibit 1)

**RESPONSE:** OBJECTION. The statement above is compound in nature and therefore does not conform to Local Rule 56.01(b). Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that the text of Tenn. Code Ann. § 40-24-105(b), in its current form and as quoted in respect to Propounded Fact #35, *supra*, speaks for itself. *See also* Tenn. Code Ann. §§ 40-24-102, 40-24-104(a), 40-25-123(b), and 40-25-129(a)(2).

47. Both before and after the 2017 Amendment, the hardship stay provisions of the Statute are for a single six-month term and are not renewable. (Stipulation of Fact ¶ 37)

**RESPONSE:** OBJECTION. The statement is vague and ambiguous with regard to the use of the phrase "the Statute" without specificity. Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp v. Western Express, Inc.*, 2014 WESTLAW 7357379 at *1 n.1 (M.D. Tenn. 2014).

Without waiving these Objections, and assuming the phrase "the Statute" refers to Tenn. Code Ann. § 40-24-105(b), as referenced at paragraph 3 of Plaintiff's Complaint, Defendant ADMITS that, as currently effective, Tenn. Code Ann. § 40-24-105(b)(3)(B) states:

> (B) The offender seeking a hardship exception shall make application to the court in the form of a sworn affidavit stating with particularity the grounds and circumstances of hardship. The court may enter a one-time stay for a period of not longer than one hundred and eighty (180) days. The court clerk shall promptly notify the commissioner of safety of the issuance or termination of any stay of revocation. The commissioner of safety shall not revoke any license under this subsection (b) while the stay is in effect.

Defendant further ADMITS that 2017 Tenn. Pub. Ch. 412 does not purport to amend Tenn. Code Ann. § 40-24-105(b)(3)(B).

48.     The Statute does not require the Commissioner to inform a person of the hardship provisions before revoking his or her license.  Tenn Code Ann. § 40-24-105(b), original and as amended.

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that the text of Tenn. Code Ann. § 40-24-105(b) (as currently in effect and as effective 1/1/18) speaks for itself.  By way of further response, the Supreme Court has held, when state-law remedies are established and published in state statutes and case law, individualized notice of those remedies is not required.  *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999).

49.     The Statute does not require the Commissioner to inform a person of the hardship provisions after revoking his or her license.  Tenn Code Ann. § 40-24-105(b), original and as amended.

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that the text of Tenn. Code Ann. § 40-24-105(b) (as currently in effect and as effective 1/1/18) speaks for itself.  By way of further response, the Supreme Court has held, when state-law remedies are established and published in state statutes and case law, individualized notice of those remedies is not required.  *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999).

50.     There is no evidence that Defendant Purkey and his subordinates in the Department of Safety in fact inform individuals of the hardship provisions at any time, before or after revocation.

**RESPONSE:** ADMITTED.


51.     In providing that a person may apply to the court for a payment plan which, if maintained, will avoid revocation of that person's driver's license, the Statute on its face makes discretionary with the court both the decision to allow such applications and the contents of any payment plans if such applications are allowed.  Tenn. Code Ann. § 40-24-105(b)(4).

**RESPONSE:** OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Moreover, the statement does not differentiate between Tenn. Code Ann. § 40-24-105(b)(4) in its current form, and Tenn. Code Ann. § 40-24-105(b)(4) as amended by 2017 Tenn. Pub. Ch. 412.

Without waiving these Objections, Defendant ADMITS that the text of Tenn. Code Ann. § 40-24-105(b) (as currently in effect and as effective 1/1/18) speaks for itself.


52.     The payment plan provision of the Statute was renumbered in the 2017 Amendment, and the reference to payment plans being "on a monthly or weekly basis" was deleted, but the provision was otherwise unaffected.  (*See* Stipulation of Fact Exhibit 1)

**RESPONSE:** OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, 2014 WESTLAW 7357379 at *1 n.

Moreover, the statement does not differentiate between Tenn. Code Ann. § 40-24-105(b)(4) in its current form, and Tenn. Code Ann. § 40-24-105(b)(4) as amended by 2017 Tenn. Pub. Ch. 412.

Without waiving these Objections, Defendant ADMITS that the text of Tenn. Code Ann. § 105(b)(4), as currently in effect, states:

> A person who is unable to pay all of the assessed litigation taxes, court costs, and fines but is able to pay some of them on a monthly or weekly basis may apply to the court having original jurisdiction over the offense for an order setting up a payment plan for such taxes, costs and fines. If the person and court agree to such a weekly or monthly payment plan, the court shall so order and such order shall have the effect of staying the revocation of the license pursuant to this subsection (b). The order staying the revocation of license shall remain in effect for as long as the person is current and in compliance with the payment plan. If the person fails to make payments according to the plan for three (3) consecutive months without good cause, the court may revoke the order and notify the clerk. The court clerk shall promptly notify the commissioner of safety of the issuance or termination of any stay of revocation. The commissioner of safety shall not revoke pursuant to this subsection (b) while the stay is in effect.

Defendant further ADMITS that the text of Tenn. Code Ann. § 105(b)(4), as effective 1/1/18, states:

> (A)  A person who is unable to pay all of the assessed litigation taxes, court costs, and fines but is able to pay some of them may apply to the court having original jurisdiction over the offense for an order setting up a payment plan for such taxes, costs, and fines.  If the person and court agree to such a payment plan, the court shall so order and such order shall have the effect of staying the revocation of the license pursuant to this subsection (b).  The order staying the revocation of license shall remain in effect for as long as the person is current and in compliance with the payment plan.  If the person fails to make payments according to the plan for three (3) consecutive months without good cause, the court may revoke the order and notify the clerk. The court clerk shall promptly notify the commissioner of safety of the issuance or termination of any stay of revocation. The commissioner of safety shall not revoke pursuant to this subsection (b) while the stay is in effect.

> (B)  In addition to the ability to apply for the approval of a payment plan as provided in subdivision (b)(4)(A), a person who is indigent, as defined in § 40-14-201, may also apply for the waiver of any outstanding court costs and fines.  A person who is indigent may apply for the waiver of outstanding court costs and fines prior to or after the revocation of license.  An application for such a waiver must include.

>> (i)  A signed affidavit of indigency; and

(ii) Payment of a fee of up to fifty dollars ($50.00), subject to the discretion of the court after consideration of the person's ability to pay.

(C) After consideration of the affidavit of indigency and the payment of any fee that may be required under this subdivision (b)(4), the court may waive any outstanding court costs and fines.

53. Even where payment plans are offered, there is no requirement in the Statute that the plans be affordable to indigent people who owe Court Debt. (*See* Stipulation of Fact Exhibit 1)

**RESPONSE:** OBJECTION. The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Moreover, the statement does not differentiate between Tenn. Code Ann. § 40-24-105(b)(4) in its current form, and Tenn. Code Ann. § 40-24-105(b)(4) as amended by 2017 Tenn. Pub. Ch. 412.

Without waiving these Objections, Defendant ADMITS that the text of Tenn. Code Ann. § 40-24-105(b)(4) (as currently in effect and as effective 1/1/18, and as recited in Response to #52, *supra*) speaks for itself.

54. Prior to the 2017 Amendment, the Statute did not contain any provisions for restricted licenses for individuals whose driver's licenses were revoked for failure to pay Court Debt. Tenn. Code Ann. § 40-24-105(b) (pre-amendment version)

**RESPONSE:** OBJECTION. The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that the text of Tenn. Code Ann. § 40-24-105(b) (as currently in effect) speaks for itself.

55.     The 2017 Amendment adds a provision for a restricted license, which would allow travel necessary for the purposes specified in the hardship section of the statute. Issuance of a restricted license is not mandatory but is discretionary with the court in which the original conviction was entered. (Stipulation of Fact ¶ 38)

**RESPONSE:** OBJECTION. The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that the text of Tenn. Code Ann. § 40-24-105 (effective 1/1/18) includes the following provision, which speaks for itself:

> SECTION 3. Tennessee Code Annotated, Section 40-24-105, is amended by adding the following as a new subsection (h):
>
>> Notwithstanding this section to the contrary, if a person has a license revoked pursuant to this section, the person may apply to the trial court having original jurisdiction over the offense for a restricted driver license. The court is vested with the authority and discretion to order the issuance of a restricted driver license for the purposes specified in subdivision (b)(3)(A). The order shall state with all practicable specificity the necessary times and places of permissible operation of a motor vehicle. The person may obtain a certified copy of the order and within ten (10) days after issuance present the order, together with an application fee of sixty-five dollars ($65.00), to the department of safety, which shall issue a restricted license embodying the limitations imposed in the order. After proper application and until the restricted license is issued, a certified copy of the order may serve in lieu of a driver license. Any restricted license issued under this section shall be valid for a period not to exceed one (1) year. A restricted license issued under this section may be renewed; provided, that each renewal shall be valid for a period not to exceed one (1) year.

56.     A regular driver's license is issued for eight years and costs $28, or $3.50 per year. (Stipulation of Fact ¶ 39)

**RESPONSE:** ADMITTED.

57.     Under the 2017 Amendment, a restricted license is issued for a one-year period and costs $65.00.  Tenn. Code Ann. § 40-24-105(h) (effective Jan. 1, 2018).

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, Defendant ADMITS that the text of Tenn. Code Ann. § 40-24-105 (effective 1/1/18) speaks for itself.


58.     The State of Tennessee expects fees for issuance of restricted licenses under the 2017 Amendment to generate $65,000, a year in additional State revenue. (Stipulation of Fact ¶ 40)

**RESPONSE:**  OBJECTION.  For the purpose of Rule 56, Fed. R. Civ. P., this fact is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

Without waiving this Objection, ADMITTED.


59.     A restricted license issued under the 2017 Amendment is valid only for travel specifically identified in the court order governing its issuance.  Tenn. Code Ann. § 40-24-105(xx) (effective Jan. 1, 2018)

**RESPONSE:**  OBJECTION.  For the purpose of Rule 56, Fed. R. Civ. P., this fact is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.  Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant DENIES the existence of "Tenn. Code Ann. § 40-24-105(xx)," and ADMITS that the text of Tenn. Code Ann. § 40-24-105 (effective 1/1/18) speaks for itself.

60.     Plaintiff James Thomas is a 48-year-old Veteran of the U.S. armed forces.   He resides in Nashville, Tennessee. He has multiple serious disabilities and relies on Supplemental Security Income (SSI) and Supplemental Nutrition Assistance Program (SNAP) for his only income.  (Thomas Dec. ¶ 1)

**RESPONSE:**  ADMITTED for the purpose of summary judgment only.


61.     In October 2016, Mr. Thomas visited the Tennessee Department of Motor Vehicles (DMV) to apply for a Tennessee driver's license. The DMV refused to issue him a license because Defendant's predecessor had already revoked it for failure to pay Court Debt.  (*Id*. ¶ 3)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.

Without waiving this Objection, ADMITTED for the purpose of summary judgment only.


62.     Because of the severity of his medical conditions, Mr. Thomas needs to see his doctors regularly.   The locations of Mr. Thomas's medical appointments with his doctors are geographically spread out.  (*Id*. ¶ 4)

**RESPONSE:**  ADMITTED for the purpose of summary judgment only.


63.     Mr. Thomas has been taking the bus to his medical appointments, but the bus ride back and forth can take hours and is often painful because of his disabilities. (*Id*.)

**RESPONSE:**  ADMITTED for the purpose of summary judgment only.

64.     Mr. Thomas's Court Debt results from a 2013 conviction for criminal trespass in Davidson County.  At the time, Mr. Thomas was homeless.  His only source of money or sustenance was SNAP benefits, which can only be used to purchase food.  On a rainy night in September, he was taking shelter under a bridge; his arrest arose from that attempt to seek shelter. (*Id.* ¶¶ 5, 6)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.

Without waiving this Objection, ADMITTED for the purpose of summary judgment only.


65.     On October 14, 2013, Mr. Thomas appeared in court, represented himself *pro se*, and was found guilty.  He was given a thirty-day suspended sentence and assessed $289.70 in court costs.  He was not assessed a fine.  (*Id.* ¶ 7)

**RESPONSE:**  ADMITTED that (a) on October 14, 2013, Plaintiff Thomas pled guilty to a charge of criminal trespass, (b) that the Davidson County General Sessions Court (per Judge Aaron Holt) gave Plaintiff Thomas a 30-day suspended sentence, and (c) Judge Thomas ordered Plaintiff Thomas to pay court costs.  *See* Certified Copy of General Sessions Disposition (contemporaneously filed as *Defendant's Exh. A*, to Defendant's Statement of Undisputed Facts). Also, ADMITTED that Plaintiff Thomas represented himself *pro se* and that court costs total $289.70.


66.     That same day, Mr. Thomas went to the Clerk's office and advised the Clerk that he could not pay because he was homeless and had no money.  (*Id.* ¶ 8)

**RESPONSE:**  ADMITTED for the purpose of summary judgment only.

67.     Mr. Thomas never heard anything further about his outstanding Court Debt until October 2016, when he was denied a Tennessee driver's license. (*Id.* ¶ 9)

**RESPONSE:**  ADMITTED for the purpose of summary judgment only.

68.     Neither the County Court Clerk nor the Tennessee Department of Safety provided Mr. Thomas with written notice of the revocation of his driver's license. (*Id.* ¶¶ 8, 9)

**RESPONSE:**  OBJECTION.  Citation to paragraphs 8-9 of Plaintiff Thomas' Declaration does not support the statement.

Without waiving this Objection, DENIED that the Department did not provide Mr. Thomas written notice of revocation.  *See* Defendant's Statement of Undisputed Facts (contemporaneously filed) at ¶ 8, and *Defendant's Exhibits D* and *D-1*, thereto.

69.     The Court Clerk did not have statutory authority to consider, and did not consider, Mr. Thomas's ability to pay the Court Debt before notifying the Department of Safety that his debt was unpaid, resulting in revocation of Mr. Thomas's license.  (Stipulation of Fact ¶ 30; Thomas Dec. ¶ 11)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.  Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that the text of Tenn. Code Ann. § 40-24-105(b) does not provide a court clerk with authority to consider Plaintiff Thomas' ability to pay restitution, litigation taxes, fines, and/or court costs.  DENIED, as a matter of law and as addressed in Defendant's Response brief, that Plaintiff Thomas did not (and does not) have an

opportunity to demonstrate to the General Sessions court his inability to pay the court costs assessed against him by Judge Holt's order.

70.     The Department of Safety did not have statutory authority to consider, and did not consider, Mr. Thomas's ability to pay the Court Debt before revoking Mr. Thomas's license. (Stipulation of Fact ¶ 31, Thomas Dec. ¶ 11)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.  Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that the text of Tenn. Code Ann. § 40-24-105(b) does not provide the Department with authority to consider Plaintiff Thomas' ability to pay restitution, litigation taxes, fines, and/or court costs.  DENIED, as a matter of law and as addressed in Defendant's Response brief, that Plaintiff Thomas did not (and does not) have an opportunity demonstrate to the General Sessions court his inability to pay the court costs assessed against him by Judge Holt's order.

71.     Mr. Thomas currently survives on very limited subsistence income for people who are totally and permanently disabled.  He cannot afford to pay the $289.70 in Court Debt, the $65 reinstatement fee, and the additional application fee necessary to regain his driving privileges. (Thomas Dec. ¶ 12)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.

Without waiving this Objection, ADMITTED for the purpose of summary judgment only.

72.     Mr. Thomas is not eligible for the hardship stay because, inter alia, his license has already been revoked.  (*Id*. ¶ 5)

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.


73.     A hardship stay would be of no use to Mr. Thomas in any event, because a six-month delay will not change the fact that he cannot afford to pay $289.70.  (*Id*. ¶ 12)

**RESPONSE:**  OBJECTION.  The statement above constitutes opinion, not fact, and is inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Moreover, citation to paragraph 12 of Plaintiff Thomas' Declaration does not support the statement.

Without waiving these Objections, Defendant ADMITS -- for the purposes of summary judgment only -- that Plaintiff Thomas currently cannot pay the $289.70 in court costs assessed by the court against him.


74.     Plaintiff David Hixson is 50 years old.  At the time of suit, he resided in a homeless shelter in Nashville, Tennessee. (Hixson Dec. ¶¶ 1, 3)

**RESPONSE:**  ADMITTED for the purpose of summary judgment only.


75.     Mr. Hixson thereafter moved into private housing, which costs him approximately half of his take-home pay. (Id. ¶ 3)

**RESPONSE:**  ADMITTED for the purpose of summary judgment only.

76.     Mr. Hixson was unable to keep up his rent payments in private housing, and now lives in a tent.  (*Id*.)

**RESPONSE:**  ADMITTED for the purpose of summary judgment only.  *See also* Defendant's Statement of Undisputed Facts (contemporaneously filed) at ¶¶ 23-24 (regarding Plaintiff Hixson's employment status).


77.     In 2014, Defendant's predecessor revoked Mr. Hixson's license for failure to pay Court Debt resulting from a criminal conviction in Washington County.  At the time of the revocation, Mr. Hixson was incarcerated and unable to pay.  (*Id*. ¶ 4)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.

Without waiving this Objection, the first sentence is ADMITTED.  The second sentence is ADMITTED for the purpose of summary judgment only.

By way of further response, *see* Defendant's Statement of Undisputed Facts (contemporaneously filed) at ¶¶ 10-15 and 25-26, and *Defendant's Exhibits B, C*, and *F* thereto (regarding Plaintiff Hixson's Washington County Circuit Court convictions in 2013 and 2015, Plaintiff Hixson's Sullivan County Circuit Court conviction in 2003, and the judgments imposed).


78.     Neither the County Court Clerk nor the Tennessee Department of Safety provided Mr. Hixson with written notice of the revocation of his driver's license.  (*Id*. ¶ 5)

**RESPONSE:**  DENIED that the Department did not provide Mr. Hixson written notice of revocation.  *See* Defendant's Statement of Undisputed Facts (contemporaneously filed) at ¶ 17, and *Defendant's Exhibits D*, *D-2*, and *D-3*, thereto.

79.    The Court Clerk did not have statutory authority to consider, and did not consider, Mr. Hixson's ability to pay the Court Debt before notifying the Department of Safety to revoke Mr. Hixson's license.  (Stipulation of Fact ¶ 30; Hixson Dec. ¶ 5)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.  Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that the text of Tenn. Code Ann. § 40-24-105(b) does not provide a court clerk with authority to consider Plaintiff Hixson's ability to pay restitution, litigation taxes, fines, and/or court costs.  DENIED, as a matter of law and as addressed in Defendant's Response brief, that Plaintiff Hixson did not (and does not) have an opportunity to demonstrate to the Circuit Court his inability to pay the fines and court costs assessed against him by the orders of Judge Cupp, Judge Rice, and Judge Miller.

80.    The Department of Safety did not have statutory authority to consider, and did not consider, Mr. Hixson's ability to pay the Court Debt before revoking Mr. Hixson's license. (Stipulation of Fact ¶ 31; Hixson Dec. ¶ 5)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.  Moreover, the statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving these Objections, Defendant ADMITS that the text of Tenn. Code Ann. § 40-24-105(b) does not provide the Department with authority to consider Plaintiff Hixson's ability to pay restitution, litigation taxes, fines, and/or court costs.  DENIED, as a matter of law and as addressed in Defendant's Response brief, that Plaintiff Hixson did not (and does not) have

an opportunity to demonstrate to the Circuit Court his ability to pay the fines and court costs assessed against him by the orders of Judge Cupp, Judge Rice, and Judge Miller.

81.     Mr. Hixson is struggling financially to meet the basic necessities of life.  He works part time as a vehicle emissions inspector, but he does not even make enough to meet the basic necessities of life.  He does not have any extra money to pay his Court Debt.  (*Id*. ¶¶ 2, 8)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.

Without waiving this Objection, ADMITTED for the purpose of summary judgment only.

82.     Mr. Hixson is qualified to work as a motorcycle mechanic. (*Id*. ¶ 11)

**RESPONSE:**  ADMITTED for the purpose of summary judgment only.

83.     Motorcycle mechanics earn more than emissions inspectors. (*Id*.)

**RESPONSE:**  OBJECTION.  The statement above constitutes opinion, not fact, and is inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Without waiving this Objection, ADMITTED for the purpose of summary judgment only.

84.     If Mr. Hixson could get a job as a motorcycle mechanic, he would have some prospect of paying off his Court Debt. (*Id*.)

**RESPONSE:**  OBJECTION.  The statement above constitutes opinion, not fact, and is inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Without waiving this Objection, ADMITTED for the purpose of summary judgment only.

85.     A valid driver's license is a requirement for a job as a motorcycle mechanic.  (*Id*.)

**RESPONSE:**  OBJECTION.  The statement above constitutes opinion, not fact, and is inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Accordingly, DENIED.


86.     Because Mr. Hixson's license has been revoked, he cannot get a job as a motorcycle mechanic and thus cannot earn enough to pay off his Court Debt. (*Id*.)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.  Moreover, the statement above constitutes opinion, not fact, and is inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.  Further, citation to paragraph 11 of Plaintiff Hixson's Declaration does not support the statement as phrased.  Accordingly, DENIED as stated.

By way of further response, Defendants contend that Plaintiff Hixson's inability to get a "better job" (Hixson declaration at ¶ 9) is attributable to his status as a registered criminal sex offender.  *See* Defendant's Statement of Undisputed Facts (contemporaneously filed) at ¶¶ 21-22, and *Defendant's Exh. E*, thereto.


87.     Mr. Hixson was not eligible for a hardship stay at the time his license was revoked and is not eligible for one now because his license has already been revoked. (*Id*. ¶ 4)

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.


88.     Mr. Hixson currently owes $2,583.80 in Court Debt plus a reinstatement fee of $140 and the cost of applying for a new license.  According to the Washington County Clerk, Mr.

Hixson needs to pay the entire $2,583.80 before he will be eligible for reinstatement of his license. (*Id*. ¶ 8)

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement above includes unsubstantiated hearsay, and is inappropriate under Local Rule 56.01(b). *See Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495. Further, citation to paragraph 8 of Plaintiff Hixson's Declaration does not support the statement as phrased.

Without waiving these Objections, Defendant ADMITS, for the purpose of summary judgment only, that -- as stated in his Declaration -- Plaintiff Hixson currently is unable to pay "$2,583.80 or any amount" for reinstatement of his license.

By way of further response, Defendant further ADMITS that -- at the time of his Washington County convictions -- the court determined that Plaintiff Hixson was capable of paying his fines and court costs, by putting him on a payment plan. *See* Defendant's Statement of Undisputed Facts at ¶ 15.

89. Mr. Hixson cannot afford to pay $2,583.80. (*Id*.)

**RESPONSE:** ADMITTED for the purpose of summary judgment only.

90. Mr. Hixson's license was automatically revoked for failure to pay Court Debt while he was incarcerated. (*Id*. ¶ 9)

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate.

Without waiving this Objection, ADMITTED for the purpose of summary judgment only.

91.     Mr. Hixson could not then and cannot now pay his Court Debt because he does not earn enough money, and he cannot obtain a better job because he does not have a driver's license. (*Id.*)

**RESPONSE:**  OBJECTION.  Use of the phrase "Court Debt" is inaccurate.  Moreover, the statement above constitutes opinion, not fact, and is inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.  By way of further response, *see* Defendant's Statement of Undisputed Facts at ¶ 15.

Without waiving these Objections, Defendant ADMITS, for the purpose of summary judgment only, that -- as stated in his Declaration -- Plaintiff Hixson currently is unable to pay "$2,583.80 or any amount" for reinstatement of his license, and currently has been unable to get a "better job."


92.     For most adult residents of Tennessee, the ability to drive is an important aspect of daily life, such as for accessing food, shelter, work, education, medical treatment, and family.  (*See* Stipulation of Fact ¶ 41; judicial notice is requested for the assertion as set forth here, which is broader ("most," instead of "many," plus the examples) than as set forth in the Stipulation of Fact; *see also* the Dickerson Remarks and the following paragraphs of this Rule 56.01 Statement)

**RESPONSE:**  OBJECTION.  The statement above constitutes opinion, not fact, and is inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Moreover, the statement above includes unsubstantiated hearsay, and is inappropriate under Local Rule 56.01(b).  *See Bowman*, 2008 WL 4449922 at *3.  *See also Sperle*, 297 F.3d at 495.

Without waiving these Objections, Defendant ADMITS that for many adult residents of Tennessee, the ability to drive is an important aspect of daily life. *See also Wells v. Malloy*, 402 F. Supp. 856, 858 (D. Vt. 1975), *aff'd without opinion* 538 F.2d 317 (2nd Cir. 1976) (TABLE).

93.     In parts of Tennessee, there is no public transportation at all.  (Stipulation of Fact ¶ 42)

**RESPONSE:**  OBJECTION.  For the purpose of Rule 56, Fed. R. Civ. P., this fact is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

Without waiving this Objection, ADMITTED.

94.     Even in cities with some public transportation, for many individuals, the public transportation offered is often inconvenient as a practical matter to enable them to travel to and from work. (Exhibit 3 at pp. 5 (defining "access to transit" as ability to reach work within 90 minutes), 12 (90 minutes is "an upper bound on the time and distance one should travel in order to reach work"), 13 (discussing basis for 90-minute threshold))

**RESPONSE:**  OBJECTION.  The statement above constitutes unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes. *See Bowman*, 2008 WL 4449922 at *3.  *See also Sperle*, 297 F.3d at 495.

95.     In Memphis, Nashville, and Knoxville, 72% to 75% of jobs are not reasonably accessible by public transportation. (Exhibit 3, App. 2, at p. 36)

**RESPONSE:** OBJECTION. The statement above constitutes unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes. *See Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495.

96.     In Nashville, Knoxville, and Chattanooga, more than two thirds of working-age residents lack access to public transportation. (Exhibit 3 at p. 8 (lines 93, 98, 100))

**RESPONSE:** OBJECTION. The statement above constitutes unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes. *See Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495.

97.     93.4% of Tennessee residents drive to work (Exhibit 5; Krugman Dec. ¶ 9)

**RESPONSE:** OBJECTION. The statement above constitutes unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes. *See Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495. Moreover, the statement above pertains to purported matters of fact made under oath by counsel of record. Counsel of record is precluded from testifying about purported matters of fact, and -- accordingly -- such matters are inadmissible. *See Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 472 (M.D. Tenn. 1992), *aff'd*, 1 F.3d 1252 (Fed. Cir. 1993) (TABLE).

98.     92.5% of the people who work in the Chattanooga metro area metro area drive to work. (Exhibit 5; Krugman Declaration ¶ 10)

**RESPONSE:** OBJECTION. The statement above constitutes unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes. *See*

*Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495. Moreover, the statement above pertains to purported matters of fact made under oath by counsel of record. Counsel of record is precluded from testifying about purported matters of fact, and -- accordingly -- such matters are inadmissible. *See Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 472 (M.D. Tenn. 1992), *aff'd*, 1 F.3d 1252 (Fed. Cir. 1993) (TABLE).

99.     94.6% of the people who work in the Clarksville metro area drive to work. (Exhibit 5; Krugman Declaration ¶ 10)

**RESPONSE:** OBJECTION. The statement above constitutes unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes. *See Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495. Moreover, the statement above pertains to purported matters of fact made under oath by counsel of record. Counsel of record is precluded from testifying about purported matters of fact, and -- accordingly -- such matters are inadmissible. *See Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 472 (M.D. Tenn. 1992), *aff'd*, 1 F.3d 1252 (Fed. Cir. 1993) (TABLE).

100.     93.1% of the people who work in the Cleveland metro area drive to work. (Exhibit 5; Krugman Declaration ¶ 10)

**RESPONSE:** OBJECTION. The statement above constitutes unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes. *See Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495. Moreover, the statement above pertains to purported matters of fact made under oath by counsel of record. Counsel of record is precluded from testifying about purported matters of fact, and -- accordingly -- such

matters are inadmissible.  *See Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 472 (M.D. Tenn. 1992), *aff'd*, 1 F.3d 1252 (Fed. Cir. 1993) (TABLE).

101.    93.4% of the people who work in the Jackson metro area drive to work. (Exhibit 5; Krugman Declaration ¶ 10)

**RESPONSE:**  OBJECTION.  The statement above constitutes unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes.  *See Bowman*, 2008 WL 4449922 at *3.  *See also Sperle*, 297 F.3d at 495.  Moreover, the statement above pertains to purported matters of fact made under oath by counsel of record.  Counsel of record is precluded from testifying about purported matters of fact, and -- accordingly -- such matters are inadmissible.  *See Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 472 (M.D. Tenn. 1992), *aff'd*, 1 F.3d 1252 (Fed. Cir. 1993) (TABLE).

102.    92.5% of the people who work in the Johnson City metro area drive to work. (Exhibit 5; Krugman Declaration ¶ 10)

**RESPONSE:**  OBJECTION.  The statement above constitutes unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes.  *See Bowman*, 2008 WL 4449922 at *3.  *See also Sperle*, 297 F.3d at 495.  Moreover, the statement above pertains to purported matters of fact made under oath by counsel of record.  Counsel of record is precluded from testifying about purported matters of fact, and -- accordingly -- such matters are inadmissible.  *See Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 472 (M.D. Tenn. 1992), *aff'd*, 1 F.3d 1252 (Fed. Cir. 1993) (TABLE).

103.    93.8% of the people who work in the Knoxville metro area drive to work. (Exhibit 5; Krugman Declaration ¶ 10)

**RESPONSE:** OBJECTION. The statement above constitutes unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes. *See Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495. Moreover, the statement above pertains to purported matters of fact made under oath by counsel of record. Counsel of record is precluded from testifying about purported matters of fact, and -- accordingly -- such matters are inadmissible. *See Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 472 (M.D. Tenn. 1992), *aff'd*, 1 F.3d 1252 (Fed. Cir. 1993) (TABLE).

104.    93.5% of the people who work in the Memphis metro area drive to work. (Exhibit 5; Krugman Declaration ¶ 10)

**RESPONSE:** OBJECTION. The statement above constitutes unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes. *See Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495. Moreover, the statement above pertains to purported matters of fact made under oath by counsel of record. Counsel of record is precluded from testifying about purported matters of fact, and -- accordingly -- such matters are inadmissible. *See Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 472 (M.D. Tenn. 1992), *aff'd*, 1 F.3d 1252 (Fed. Cir. 1993) (TABLE).

105.    92.4% of the people who work in the Nashville metro area drive to work. (Exhibit 5; Krugman Declaration ¶ 10)

**RESPONSE:** OBJECTION. The statement above constitutes unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes. *See Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495. Moreover, the statement above pertains to purported matters of fact made under oath by counsel of record. Counsel of record is precluded from testifying about purported matters of fact, and -- accordingly -- such matters are inadmissible. *See Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 472 (M.D. Tenn. 1992), *aff'd*, 1 F.3d 1252 (Fed. Cir. 1993) (TABLE).

106. Many indigent people who owe Court Debt and whose licenses have been revoked under the Statute still need to drive in order to get to work, school, or medical appointments. (*See* Thomas Declaration; Hixson Declaration; Dickerson Remarks; judicial notice)

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement above constitutes opinion, not fact, and is inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Further, the statement above cites to unsubstantiated hearsay, is inadmissible, and -- therefore -- may not be considered for summary judgment purposes. *See Bowman*, 2008 WL 4449922 at *3. *See also Sperle*, 297 F.3d at 495.

107. From July 1, 2012, to June 1, 2016, the Tennessee Department of Safety and Homeland Security ("DOS") revoked 146,211 driver's licenses for failure to pay Court Debt pursuant to the Statute. (Stipulation of Fact ¶ 43)

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate.

Without waiving this Objection, Defendant ADMITS that from July 1, 2012, to June 1, 2016, the Tennessee Department of Safety and Homeland Security ("DOS") revoked 146,211

driver's licenses for failure to pay restitution, litigation taxes, fines, and/or court costs pursuant to Tenn. Code Ann.§ 40-24-105(b).

108.    Over the same period, only 10,750 people (7%) whose licenses were revoked for non-payment of restitution, litigation taxes, fines, and/or court costs pursuant to the Statute had their licenses reinstated.  (Stipulation of Fact ¶ 44)

**RESPONSE:**  ADMITTED.

109.    For the first offense, driving on a revoked license is a Class B Misdemeanor, punishable by up to six months in jail, a fine of up to $500, or both.  Tenn. Code Ann. §§ 40-35-111(e)(2); 55-50-504(a)(1).  (Stipulation of Fact ¶ 45)

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, ADMITTED that Tenn. Code Ann. §§ 40-35-111(e)(2); 55-50-504(a)(1) contain such penalties.

110.    For second and subsequent offenses, driving on a revoked license is a Class A Misdemeanor, punishable by up to 11 months and 29 days in jail, a fine of up to $2,500, or both. Tenn. Code Ann. §§ 40-35-111(e)(2); 55-50-504(a)(2).  (Stipulation of Fact ¶ 46)

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.

Without waiving this Objection, ADMITTED that Tenn. Code Ann. §§ 40-35-111(e)(2); 55-50-504(a)(2) contain such penalties.

111.     The subsequent charges generate their own fines and costs.  Some people can serve jail time for driving on revoked licenses (Stipulation of Fact ¶ 47).

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Moreover, the citation to Stipulation #47 does not support the asserted statements.

Without waiving this Objection, Defendant ADMITS that -- as the factual circumstances of each criminal case dictate -- convictions for driving on a revoked license can result in the assessment of litigation taxes and court costs in addition to the imposition of fines and jail sentences.


112.     The Statute does not contain the protections in the statutory provisions for revocation of driver's licenses for failure to pay child support, because child support obligors threatened with license suspension or revocation have available to them substantial procedural and substantive protections not available to those who owe Court Debt under the Statute.  Specifically:

a.     In contrast with the Statute, which provides no notice of revocation whatsoever, the child support license provisions expressly provide for notice and an opportunity to be heard prior to revocation.  Tenn. Code Ann. § 36-5-702;

**RESPONSE:**  OBJECTION.  The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Further, for the purpose of Rule 56, Fed. R. Civ. P., this statement is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.


b.     In contrast with the Statute, which does not provide for applications to reduce or waive fees or costs based on indigency, the child support license provisions:

i. require a finding of "good cause" before the "sanction" of suspension can be imposed, Tenn. Code Ann. § 36-5-703(c)(3), and

**RESPONSE:** OBJECTION. The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Further, for the purpose of Rule 56, Fed. R. Civ. P., this statement is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

ii. expressly permit a child support debtor facing license revocation to move to modify the underlying support obligation, which motion automatically stays the license revocation until it is resolved, Tenn. Code Ann. § 36-5-704(a).

**RESPONSE:** OBJECTION. The statement above addresses matters of law, which are inappropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Further, for the purpose of Rule 56, Fed. R. Civ. P., this statement is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

113. The State of Tennessee imposes substantial limitations on the ability of private creditors to enforce judgments for the payment of money. For example:

a. Personal property in the amount of $10,000 debtor's equity interest is "exempt from execution, seizure or attachment." Tenn. Code Ann. § 26-2-103(a);

**RESPONSE:** OBJECTION. The statement above addresses matters of both opinion and law, neither of which are appropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Further, for the purpose of Rule 56, Fed. R. Civ. P., this statement is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

b. Clothing, family portraits, family Bibles, and school books are likewise exempt. *Id*. § 26-2-104.

**RESPONSE:** OBJECTION. The statement above addresses matters of both opinion and law, neither of which are appropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Further, for the purpose of Rule 56, Fed. R. Civ. P., this statement is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

 

    c.      So, too, are state, federal, and local pension and disability benefits. Id. §§ 26-2-105(a), -111(1).

**RESPONSE:** OBJECTION. The statement above addresses matters of both opinion and law, neither of which are appropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Further, for the purpose of Rule 56, Fed. R. Civ. P., this statement is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

 

    d.      State and local pension benefits remain exempt, by Tennessee law, even when de deposited into a bank. *Id*. § 26-2-105(a).

**RESPONSE:** OBJECTION. The statement above addresses matters of both opinion and law, neither of which are appropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Further, for the purpose of Rule 56, Fed. R. Civ. P., this statement is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

 

    e.      Under federal law, so do directly deposited federal benefit payments. *See* C.F.R. Part 212 (2016).

**RESPONSE:** OBJECTION. The statement above addresses matters of both opinion and law, neither of which are appropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Further, for the purpose of Rule 56, Fed. R. Civ. P., this statement is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

f.    Professional books and tools of trade are exempt up to a value of $1,900.  Tenn. Code Ann. § 26-2-111(4).

**RESPONSE:**  OBJECTION.  The statement above addresses matters of both opinion and law, neither of which are appropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.  Further, for the purpose of Rule 56, Fed. R. Civ. P., this statement is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

g.    Except for child support or alimony, wage garnishments may not exceed the lesser of

   i.    require a finding of "good cause" before the "sanction" of suspension can be imposed, Tenn. Code Ann. § 36-5-703(c)(3), and

   ii.   expressly permit a child support debtor facing license revocation to move to modify the underlying support obligation, which motion automatically stays the license revocation until it is resolved, Tenn. Code Ann. § 36-5-704(a).

**RESPONSE:**  OBJECTION.  The statement above addresses matters of both opinion and law, neither of which are appropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1.  Further, for the purpose of Rule 56, Fed. R. Civ. P., this statement is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

h.    Even with respect to child support, withholdings from the debtor's income "shall not exceed fifty percent (50%) of the employee's income after FICA, withholding taxes, and a health insurance premium that covers the child, are deducted."  Tenn. Code Ann. § 36-5-501.

**RESPONSE:**  OBJECTION.  The statement above addresses matters of both opinion and law, neither of which are appropriate under Local Rule 56.01(b).  *See*, *e.g.*, *Sapp*, 2014

WESTLAW 7357379 at *1 n.1. Further, for the purpose of Rule 56, Fed. R. Civ. P., this statement is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

114. Under the Statute, there is no requirement that the payments in a Court Debt payment plan (to the extent payment plans are available at all in a given county) be limited to amounts in excess of the amounts that would be exempt from execution and/or garnishment. Tenn. Code Ann. § 40-24-105(b)(3).

**RESPONSE:** OBJECTION. Use of the phrase "Court Debt" is inaccurate. Moreover, the statement above addresses matters of law, which is appropriate under Local Rule 56.01(b). *See*, *e.g.*, *Sapp*, 2014 WESTLAW 7357379 at *1 n.1. Further, for the purpose of Rule 56, Fed. R. Civ. P., this statement is IMMATERIAL to the claims brought by Plaintiffs Thomas and Hixson.

HERBERT H. SLATERY III
Attorney General and Reporter

/s/ Andrew B. Campbell
ANDREW B. CAMPBELL (14258)
Assistant Attorney General
Public Interest Division
Andrew.Campbell@ag.tn.gov (615) 532-0356

KATHERINE M. DIX (22778)
Special Counsel
Public Interest Division
Katherine.Dix@ag.tn.gov (615) 532-5817

SCOTT C. SUTHERLAND (29013)
Deputy Attorney General
Law Enforcement &
Special Prosecutions Division
P.O. Box 20207
Nashville, TN   37202
Scott.Sutherland@ag.tn.gov (615) 532-7688

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically on November 6, 2017. A copy of the foregoing was sent automatically by the Court's electronic filing system via a notice of docket entry to the following attorneys of record:

| | |
|---|---|
| Lori H. Patterson, Esq.<br>Matthew G. White, Esq.<br>BAKER DONELSON, BEARMAN,<br>CALDWELL & BERKOWITZ<br>First Tennessee Bank Bldg., 165 Madison<br>Avenue, Suite 2000<br>Memphis, TN 38103 | Claudia Wilner, Esq.<br>Peter Tasheff, Esq.<br>Edward P. Krugman, Esq.<br>NATIONAL CENTER FOR LAW AND<br>ECONOMIC JUSTICE<br>275 Seventh Avenue, Suite 1506<br>New York, NY 10001 |
| Premal Dharia, Esq.<br>Jonas Wang, Esq.<br>CIVIL RIGHTS CORPS<br>910 17th Street, Suite 500<br>Washington, DC 20006 | Josh Spickler, Esq.<br>JUST CITY<br>902 South Cooper Street<br>Memphis, TN 38104 |

/s/ Andrew B. Campbell
ANDREW B. CAMPBELL