IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES THOMAS and DAVID HIXSON, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:17-0005 |
| ) | Class Action |
| BILL HASLAM, Governor of Tennessee, ) | |
| in his official capacity; DAVID W. ) | Judge Trauger |
| PURKEY, Commissioner for the ) | |
| Department of Safety and Homeland ) | |
| Security, in his official capacity; and ) | |
| HERBERT SLATERY, III, Attorney ) | |
| General and Reporter, in his official ) | |
| capacity, ) | |
| ) | |
|     Defendants. ) | |

_____

**DEFENDANT'S RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
_____

The Attorney General, on behalf of Defendant David W. Purkey, Commissioner for the Department of Safety and Homeland Security, in his official capacity, submits this Response in Opposition to Plaintiff's Motion for Class Certification (D.E. 6).

### FACTS

**A.    The Complaint.[1]**

On January 4, 2017, Plaintiffs filed a class-action complaint, asserting that they were two Tennessee citizens with criminal convictions. (D.E. 1, ¶ 71, 75, 82, 83). Both assert that as a

---

[1]     Allegations from the Complaint are set forth herein solely for the purpose of responding to the Motion for Class Certification. Plaintiffs and Defendant Purkey have submitted cross-motions for summary judgment, and asserted factual matters are detailed in the parties' respective summary judgment filings.

result of unpaid court costs, litigation taxes, or fines, their driver's licenses were revoked by Defendants. (D.E. 1, ¶ 72, 75, 83, 90). Plaintiffs allege that Defendants revoked their licenses pursuant to Tenn. Code Ann. § 40-24-105(b)(1), which reads:

> A license issued under title 55 for any operator or chauffeur shall be revoked by the commissioner of safety if the licensee has not paid all litigation taxes, court costs, and fines assessed as a result of disposition of any offense under the criminal laws of this state within one (1) year of the date of disposition of the offense. The license shall remain revoked until such time as the person whose license has been revoked provides proof to the commissioner of safety that all litigation taxes, court costs, and fines have been paid.

(D.E. 1, ¶ 24-33).

Plaintiffs allege that they cannot afford to pay the unpaid court costs, litigation taxes, or fines to have their licenses reinstated. (D.E. 1, ¶ 81, 91).

### B. Nature of alleged constitutional violations.

Plaintiffs assert that Tenn. Code Ann. § 40-24-105(b) is unconstitutional as applied to those individuals who cannot pay their unpaid court costs, litigation taxes, or fines due to their indigence. (D.E. 1, ¶ 100-102). They allege that the practice of revoking drivers' licenses pursuant to the statute violates the fundamental fairness, procedural fairness, and equal protection guaranteed by the Fourteenth Amendment to the United States Constitution. (D.E. 1, ¶ 100-102).

### C. Information regarding Plaintiff's Proposed Class.

Plaintiffs' proposed class consists of "[a]ll persons whose Tennessee driver's licenses have been or will be revoked pursuant to Tenn. Code Ann. § 40-24-105(b) and who, at the time of the revocation, cannot or could not pay Court Debt due to their financial circumstances." (D.E. 6, p. 2). As to the potential number of members, Plaintiffs[2] refer to the total number of individuals

---

[2] In support of their motion for class certification, Plaintiffs have submitted three declarations. The declarations of Plaintiffs Thomas and Hixson illuminate their particular circumstances. (D.E. 6-1 and 6-2). Plaintiff's counsel submitted the only declaration relating to

2

whose driver's licenses were suspended by the Tennessee Department of Safety pursuant to Tenn. Code Ann. § 40-24-105(b) from July 1, 2012 to June 1, 2016 (146,211 individuals), and to the total number of license reinstatements by the Department (10,750 reinstatements). (D.E. 6-3, p. 3). Plaintiffs also point to several statistics allegedly correlating poverty and indigence to incarceration. (D.E. 6-3, p. 3-4).

### F. Procedural Status of Motion.

Plaintiffs filed their Motion for Class Certification, (D.E. 6), with supporting memorandum, (D.E. 7), on January 5, 2017. On August 8, 2017, the Court set August 18, 2017, as the deadline for Plaintiffs to file a renewed motion for class certification, and set September 18, 2017, as the deadline for Defendants to file a response. (D.E. 33). Plaintiffs filed a renewed motion for class certification on August 18, 2017. (D.E. 36). On September 18, 2017, Defendants moved to extend their time to respond to the motion for class certification. (D.E. 48). The Court granted the motion, setting the deadline for October 18, 2017, and later extending the deadline until November 6, 2017. (D.E. 49, 56).

## LAW AND ARGUMENT

### A. Class Certification Standard.

A class may be certified only if the movant proves that (1) the class is so numerous that joinder of all members would be impracticable ("numerosity"); (2) there are questions of fact and law common to the class ("commonality"); (3) the claims of the representatives are typical of the

---

more than an individual plaintiff. (D.E. 6-3). Of course, factual declarations by counsel of record pose unique ethical complications; the Defendants object to such a practice and ask that the declaration of Claudia Wilner be stricken. *See* LR 83.01(e) (U.S.D.C. Middle District of Tennessee); Tenn. Sup. Ct. R. 8, RPC 3.7 (barring an attorney from acting as a witness absent certain exceptions). *See also Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 472 (M.D. Tenn. 1992), aff'd, 1 F.3d 1252 (Fed. Cir. 1993) (TABLE).

3

claims of the unnamed members ("typicality"); and (4) the named representatives will be able to represent the interests of the class adequately ("adequacy"). Fed.R.Civ.P. 23(a). In addition to Rule 23(a), at least one of the three alternative subsections of Rule 23(b) must also be satisfied. Fed. R. Civ. P. 23(b).

While the trial court has broad discretion in determining whether to certify a class, that discretion must be exercised within the framework of Rule 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). The court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). The "rigorous analysis" requirement means that a class is not maintainable merely because the complaint and the motion parrot the legal requirements of Rule 23. *In re Am. Med. Syst., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996). Instead, plaintiffs must "satisfy through evidentiary proof [each of the Rule 23(a) factors and] at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013).

    **B.**    **Plaintiffs cannot meet their burden for class certification.**

    1.    <u>Plaintiffs' evidentiary proof is unsatisfactory.</u>

As a threshold matter, Plaintiffs cannot satisfy the "rigorous analysis" requirement with the negligible evidence attached to their motion and memorandum in support of class certification. As described *supra*, the "rigorous analysis" requirement means that a class is not maintainable merely because the complaint and the motion parrot the legal requirements of Rule 23. *In re Am. Med. Syst., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996). Instead, plaintiffs must "satisfy through evidentiary proof [each of the Rule 23(a) factors and] at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013)

4

The only evidence submitted in support of the motion for summary judgment are three declarations, one from Plaintiff Thomas, one from Plaintiff Hixson, and one from their counsel, Claudia Wilner. (D.E. 6-1, 6-2, 6-3). The declaration from Plaintiff Thomas only speaks to his individual circumstances; it asserts that his license was suspended due to unpaid court costs and that his income is insufficient to pay the outstanding sums to have his license reinstated. (D.E. 6-1). It does not speak to any other member of the proposed class.

Plaintiff Hixson's declaration does much the same. It alleges an unspecific criminal conviction resulting in court costs, litigation taxes, or fines; the Department of Safety revoked his license because he failed to pay this court-ordered monetary judgment. (D.E. 6-2). His declaration does not speak to any other member of the proposed class.

Claudia Wilner's ("Counsel Wilner") declaration represents testimonial evidence; she declares under the penalty of perjury that the facts as alleged in her declaration are true. (D.E. 6-3). She confirms that she is counsel for Plaintiffs and their class on behalf of the National Center for Law and Economic Justice. (D.E. 6-3, ¶ 1-2). But while counsel of record may attest to uncontested issues or the nature and value of legal services rendered, Tenn. Sup. Ct. R. 3.7 precludes a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness. *See* LR 83.01(e) (U.S.D.C. Middle District of Tennessee); Tenn. Sup. Ct. R. 8, RPC 3.7. By making her declaration, Counsel Wilner has opened herself to cross-examination in the very matter in which she represents Plaintiffs. This Court previously has noted that a lawyer "who is on his feet in the pit of this courtroom" has one role, while a witness, whose credibility always is at issue, has another. *Smith Corona Corp.*, 784 F. Supp. at 472. Counsel Wilner has appeared as both an attorney and a witness; she cannot serve in this "dual function". Her testimony should be stricken. *See, e.g., Orrand v. Keim Concrete Pumping, Inc.*, No. 2:08-cv-1046, 2010

WL 3447647, at *8 (S.D. Ohio Aug. 30, 2010). And in the absence of Counsel Wilner's declaration, there is absolutely no evidence, aside from the bare allegations of the complaint and the motion and memorandum in support of class certification, in support of class certification.

But even taken at face-value, Counsel Wilner's declaration does not represent first-hand knowledge sufficient to certify the class. She asserts that the Department of Safety revoked the driver's licenses of 146,211 individuals pursuant to Tenn. Code Ann. § 40-24-105(b), and that 93% of those licenses were not reinstated. (D.E. 6-3). She also asserts that persons who are incarcerated cannot maintain or enter into payment plans and that 75% of criminal defendants qualify for appointed counsel. (D.E. 6-3). She also paints several broad strokes about the alleged link between incarceration and poverty, but fails to do much more than parrot Rule 23(a). She does not cite any evidence known to her first-hand, and this reliance on hearsay alone is unavailing.

The declarations of the representative Plaintiffs do nothing to drive their complaint as a class-action. Only Counsel Wilner's declaration attempts as much; it is evident that this action is lawyer-driven. But regardless, as her declaration fails to satisfy the implied "rigorous analysis" requirement of Rule 23(a), the motion for class certification should be denied.

2. <u>Plaintiffs cannot satisfy the numerosity requirement</u>.

Plaintiffs cannot show numerosity. To prove numerosity, a plaintiff must demonstrate that the putative class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a) (1). The Sixth Circuit has observed that "while the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and *cannot be speculative*." *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) (emphasis added). In *Golden,* the putative class consisted of Columbus tenants whose water service was or was going to be terminated because of a prior tenant's or the landlord's indebtedness. *Id.* at 966. To establish

numerosity, the plaintiff relied on the number of renters in Columbus (150,000). *Id.* The Court found this was not sufficient to establish numerosity:

> Golden must offer something more than bare speculation to link the gravamen of her claim for liability to the class of individuals she purports to represent. The gravamen of Golden's equal protection claim is that the City irrationally terminates certain tenants' water service. Golden does not allege that *all* tenants in Columbus are at risk of constitutional harm, only those whose predecessors or landlords are indebted to the City. Thus, reference to the total number of tenants in Columbus is not probative of the number of tenants reasonably likely to face the harm for which Golden seeks redress. Of course, the total number of tenants in Columbus is probative in the very limited sense that it represents the absolute maximum number of plaintiffs that could be in any class action brought by a tenant against the City. But the district court must engage in a "rigorous analysis" when evaluating the plaintiff's proof of numerosity.

*Golden,* 404 F.3d at 966 (emphasis in original).

Plaintiffs' argument here fails for similar reasons. For numerosity, Plaintiffs refer to the total number of individuals whose driver's licenses were suspended by the Tennessee Department of Safety pursuant to Tenn. Code Ann. § 40-24-105(b) from July 1, 2012 to June 1, 2016 (146,211 individuals), and to the total number of license reinstatements by the Department (10,750 reinstatements). (D.E. 6-3, p. 3). Plaintiffs (again through Counsel Wilner's declaration) also point to several statistics allegedly correlating poverty and indigence to incarceration. (D.E. 6-3, p. 3-4).

But Plaintiffs have done little more than guess that most of the non-reinstated license-revocation actions involved individuals without the means to pay court costs, litigation taxes, or fines. It is just as likely, based upon the proof before this Court at this stage, that a majority of those revocations involved individuals with the means to satisfy the outstanding sums. The poverty and incarceration statistics alleged by Counsel Wilner do nothing to even guesstimate the percentage of the total revocations that were based upon an inability to pay. And while the total represents the absolute maximum number of plaintiffs that could be in any class action, such a

7

limited showing is insufficient to survive the "rigorous analysis" in evaluating the proof of numerosity. *Golden*, 404 F.3d at 966.

Because Plaintiffs have failed to go beyond mere speculation as to showing that the number claimants is "so numerous that joinder of all members is impracticable," their request for class certification should be denied. *Golden*, 404 F.3d at 966.

    3.    <u>Plaintiffs cannot satisfy the commonality requirement</u>.

Plaintiffs also cannot show commonality. Plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires Plaintiff to demonstrate that class members have suffered the same injury, and that their claims depend upon a common contention. *Dukes,* 131 S.Ct. at 2551. "That common contention, moreover, must be of such a nature that it is capable of class-wide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

In the present case, this Court will be unable to resolve the issues that are central to the validity of each one of the claims "in one stroke." Importantly, this balancing (which is critical for the claims) must take place for each individual, and not the class as a whole. In other words, whether the drivers-license revocation process is constitutionally justified on procedural-due-process and equal-protection grounds depends on each individual plaintiff's underlying offense and the State's interest in each specific circumstance. In all revocation actions, the state has an interest in repayment of the outstanding court costs. But in other cases, additional rationale may be present based upon the underlying conviction. For example, revocation of a driver's license for nonpayment of court costs resulting from a vehicular homicide/driving under the influence conviction, certainly has a constitutionally-sound basis given the close nexus to public safety.

8

Because such an analysis relies determinatively on individualized factors, this Court cannot "resolve the issues that are central to the validity of each one of the claims in one stroke." *Secreti vs. PTS of* America, No. 3-13-1065, 2015 WL 3505146 (M.D. Tenn. June 3, 2015) at *4 (quoting *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 131 S.Ct. 2541 at 2551 (2011)).

Plaintiffs attempt to show commonality by submitting four "questions" common to all members.[3] The plaintiff in *Secreti* similarly identified five questions common to all members, but such questions (like the ones raised here) are insufficient because *the* question central to the validity of each claim cannot be *answered* as to the class as a whole, but must be examined through a balancing of interests for each individual. *Secreti*, *supra.*; *Dukes*, 131 S.Ct. at 2551. As the Supreme Court explained, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S.Ct. at 2551 (emphasis added). Because this Court will not be able resolve the issues that are central to the validity of each one of the claims "in one stroke," there is no commonality.[4]

---

[3] The "common questions" include (1) whether the statute is fundamentally unfair because it deprives Plaintiffs of the right to drive solely because of their poverty, (2) whether the statute violates the due process clause because it does not afford Plaintiffs and class members notice and an opportunity to be heard in connection with the revocation of their driver's licenses, (3) whether the statute violates the due process and equal protection clauses because it mandates the automatic revocation of driver's licenses from Plaintiffs and class members without considering whether they have the ability to pay, and (4) whether the statute violates the equal protection clause because it treats people who have unpaid court costs unduly harshly by mandating the revocation of their driver's licenses without consideration of their ability to pay. (D.E. 1, ¶ 95).

[4] *Secreti* at *4. *See also Phillips v. Sheriff of Cook Cty.,* 828 F.3d 541, 553–54 (7th Cir. 2016) (affirming district court's finding of no commonality in class action against Jail for inadequate dental care because the merits of each plaintiff's claim would depend on facts of each individual and could not be resolved for the class as a whole); *Wharton v. Coupe*, 2015 WL 5768936, at *4 (D. Del. 2015) (commonality lacking for putative class action against Delaware Department of Correction for over-detention of inmates where class-wide resolution in "one-stroke" was not

The lack of commonality is demonstrated here by the disparate postures of both named-Plaintiffs. As a consequence of pleading guilty to a misdemeanor (i.e., criminal trespass), Plaintiff Thomas received a 30-day suspended sentence and assessed $289.70 in court costs by the Davidson County General Sessions court. *See* Defendant's Statement of Undisputed Facts at ¶¶ 4-6. In contrast, Plaintiff Hixson has received at least three Circuit Court criminal convictions: (a) a 2003 conviction in Sullivan County Circuit Court for attempted aggravated sexual battery on a minor (a felony), *id*. at ¶ 25, (b) at 2013 Washington County Circuit Court misdemeanor conviction rendered, in part, for his failure to participate in a court-ordered "sexual offense treatment" program, *id*. at ¶ 10, and (c) another misdemeanor conviction in Washington County Circuit Court in 2015 for the same offense. *Id*. at ¶ 13. With each conviction, Plaintiff Hixson was ordered by the Circuit Courts to pay fines and court costs. *Id*. at ¶¶ 12, 15, and 26. For at least one conviction, Plaintiff Hixson was permitted by the court to pay his fines and costs in installments (which demonstrates that the court itself considered Mr. Hixson's financial means). *Id*. at ¶ 15. Yet, Plaintiff Hixson now seeks to have this Court require Defendant Purkey to hold *another* hearing regarding Mr. Hixson's ability to pay these court-ordered penalties and costs.

4. <u>Plaintiffs cannot satisfy the typicality requirement</u>.

Plaintiffs also cannot demonstrate typicality. Typicality is met if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 399 (6th Cir.1998). The two concepts of commonality and typicality "tend to merge" in practice. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013). "[T]ypicality cannot be established when a named plaintiff who proves his own claim

---

possible due to the fact that some of the over-detentions were caused by court-errors and not allegedly unconstitutional practices).

would not necessarily have proved anyone else's claim." *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 79 (M.D. Tenn. 2004).

Similarly, in the present case, even if the two representative Plaintiffs prove that their constitutional rights were violated, they will not necessarily prove any other individual's claim due to the varying circumstances which may or may not justify license revocation. As discussed *supra*, that will necessarily require a constitutional balance between the opposing interests, which are not uniform from case to case based upon the differences in class and seriousness of the specific criminal convictions underlying the unpaid court costs. Accordingly, typicality is not satisfied. *Sprague*, 133 F.3d at 399.

5. <u>Plaintiff cannot satisfy the requirements of Rule 23(b)(2)</u>.

Class certification should also fail because Plaintiffs cannot satisfy at least one of the subsections of Rule 23(b). *See, e.g., Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013). Plaintiffs here rely solely upon Rule 23(b)(2). (D.E. No. 6, p.1).

Rule 23(b)(2) provides that a class may be certified if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to [a Rule 23(b)(2)] class is . . . the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 131 S. Ct. at 2557 (internal quotation marks omitted). Moreover, "[d]eclaratory or injunctive relief under 23(b)(2) is appropriate where it 'is a separable and distinct type of relief that will *resolve an issue common to all class members.*'" *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) (emphasis added). To certify a class under Rule 23(b)(2), it is generally sufficient

11

"that class members complain of a pattern or practice that is generally applicable to the class as a whole." *Robinson v. Gen. Elec. Co.*, 2016 WL 1464983, at *15 (E.D. Mich. 2016).

As described above, plaintiffs are seeking to certify a class that includes all persons whose driver's licenses have been revoked pursuant to the challenged statute and could not pay their outstanding court costs. (*See* D.E. 6, p. 2). They argue that "this Court's issuance of 'a single injunction will provide relief to each class member.'" (D.E. 7, p. 11). But what Plaintiffs overlook, and what makes a Rule 23(b)(2) class action inappropriate, is that a "single injunction" cannot globally address the contours of the potential equal-protection and due-process claims.

Procedural due process and equal protection will necessarily pit the interests of the state against those of each individual Plaintiff and class member; to determine whether license revocation for non-payment of court costs is constitutionally suspect, we must determine whether the state has a sufficient interest to do so. For example: while the State's interest in collecting unpaid fines and court costs can be applied uniformly across all revocation actions, whether there exists an equally-rational and constitutionally-sufficient safety rationale requires a more individualized determination. Revocation of a license resulting from non-payment of court costs stemming from a vehicular-homicide or reckless-driving conviction certainly represents a constitutionally-sufficient nexus to public safety apart from the State's equally-rational interest in repayment. Differing interests in each individual State/class member constitutional analysis renders class-wide injunctive relief overbroad and unsuitable.

Accordingly, individual determinations must be made in each case to determine eligibility for injunctive relief. The "single injunction" suggested by Plaintiffs would result in overbroad relief; certain members of the suggested class would not merit it. Rule 23(b)(2) certification based upon class-wide injunctive liability is therefore inappropriate. *See, e.g., Timoneri v. Speedway,*

12

*LLC*, 186 F. Supp. 3d 756, 764 (N.D. Ohio 2016) (Rule 23(b)(2) certification not available in class action for alleged violations of the Americans with Disabilities Act (ADA) because the differences in the alleged ADA violations would require the Court to conduct an individualized analysis of each location's compliance or non-compliance, making a class-wide finding of injunctive liability inappropriate). Accordingly, Plaintiffs cannot satisfy Rule 23(b)(2).

## CONCLUSION

For the aforementioned reasons, Plaintiffs cannot satisfy all of the requirements for class certification, and therefore their Motion should be denied.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

/s/ Alexander S. Rieger
ALEXANDER S. RIEGER (BPR #029362)
Deputy Attorney General
General Civil Division
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-2408
Alex.Rieger@ag.tn.gov

# CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2017, a copy of the foregoing response was filed electronically and forwarded via the U.S. District Court's electronic filing system to:

Lori H. Patterson, Esq.
Matthew G. White, Esq.
BAKER DONELSON, BEARMAN, CALDWELL & BERKOWITZ
First Tennessee Bank Bldg., 165 Madison Avenue, Suite 2000
Memphis, TN 38103

Claudia Wilner, Esq.
Peter Tasheff, Esq.
Edward P. Krugman, Esq.
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001

Premal Dharia, Esq.
CIVIL RIGHTS CORPS
910 17th Street, Suite 500
Washington, DC 20006

Josh Spickler, Esq.
JUST CITY
902 South Cooper Street
Memphis, TN 38104

/s/ Alexander S. Rieger
ALEXANDER S. RIEGER
Deputy Attorney General