**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

------------------------------------------------------X

JAMES THOMAS and DAVID HIXSON, on
behalf of themselves and all others similarly
situated,

                         Plaintiffs,

       v.

DAVID W. PURKEY, Commissioner of the
Tennessee Department of Safety and Home-
land Security,

                         Defendant.

------------------------------------------------------X

No. 3:17-cv-00005

JUDGE TRAUGER

 

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

*Page*

Table of Authorities ........................................................................................... i

I.    MR. HIXSON'S 2003 CONVICTION IS IRRELEVANT ................................ 2

II.   *ROOKER-FELDMAN* DOES NOT APPLY HERE ....................................... 3

III.  THE STATUTE IS UNCONSTITUTIONAL BECAUSE IT
DEPRIVES PLAINTIFFS OF SUBSTANTIVE DUE PROCESS
AND VIOLATES THE EQUAL PROTECTION CLAUSE ........................... 7

    A.   On *Bearden* and *Robinson v. Purkey* ...................................... 7

    B.   *Bearden* Applies Here .............................................................. 9

    C.   The Statute Cannot Survive Application of the
*Bearden* Test .......................................................................... 11

    D.   The Statute Cannot Survive Rational Basis Review ................ 12

    E.   The Statute Violates Equal Protection Because the
State Grants Itself Debt Collection Practices It Forbids
to Private Creditors ................................................................. 15

    F.   The Statute Deprives Plaintiffs of Procedural Due
Process ..................................................................................... 15

CONCLUSION ...................................................................................................... 16

GLOSSARY ........................................................................................................... 17

*Page*

*Meyer v. Debt Recovery Solutions, Inc.,* ..................................................................... 5
    2010 U.S.Dist. LEXIS 91251 (N.D.Ohio Sept. 2, 2010)

*Bearden v. Georgia* ................................................................................................ *passim*
    461 U.S. 660 (1983)

*Bell v. Burson* ............................................................................................................... 8
    402 U.S. 535 (1971)

*Blackhawk Mining Co. v. Andrus* ............................................................................... 14
    711 F.2d 753 (6th Cir. 1983)

*Broussard v. Par. of Orleans* ..................................................................................... 14
    318 F.3d 644 (5th Cir. 2003)

*Carter v. Lynch* ........................................................................................................... 14
    429 F.2d 154 (4th Cir. 1970)

*City of Cleburne v. Cleburne Living Ctr.* ................................................................... 13
    473 U.S. 432 (1985)

*City of Mayfield Heights v. Woodhawk Club Condo. Owners Assoc.* .......................... 13
    205 F.3d 1339 (6th Cir. 2000)

*Davis v. Wells Fargo, N.A.* ........................................................................................... 6
    2013 U.S.Dist. LEXIS 13208 (M.D.Tenn. Jan. 31, 2013)

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.* .......................................................... 3
    544 U.S. 280 (2005)

*Griffin v. Illinois* ...................................................................................................... 9, 11
    351 U.S. 12 (1956)

*James v. Strange* ........................................................................................................ 2, 8
    407 U.S. 128 (1972)

*Johnson v. Bredesen* ................................................................................................... 7, 8
    624 F.3d 742 (6th Cir. 2010)

*King v. Creed* ............................................................................................................. 5, 6
    2015 U.S.Dist. LEXIS 24559 (Mar. 2, 2015)

*Lawrence v. Welch* ......................................................................................................... 4
    531 F.3d 364 (6th Cir. 2008)

*McCormick v. Braverman* ...................................................................................... 4
    451 F.3d 382 (6th Cir. 2006)

*McDermott v. Barton* ......................................................................................... 5
    2014 U.S.Dist. LEXIS 165656 (S.D.Ill. Nov. 26, 2014)

*M.L.B. v. S.L.J.* ................................................................................................ 11
    519 U.S. 102 (1996)

*Mickelson v. Cty. of Ramsey* ............................................................................ 14
    823 F.3d 918 (8th Cir. 2016)

*Normandeau v. City of Phoenix* ........................................................................ 6
    516 F.Supp.2d 1054 (D.Ariz. 2005)

*Ortwein v. Schwab* ........................................................................................... 11
    410 U.S. 656 (1973)

*Powers v. Hamilton County Pub. Defender Comm'n* ....................................... 4
    501 F.3d 592 (6th Cir. 2007)

*Rinaldi v. Yeager* ............................................................................................. 12
    384 U.S. 305 (1966)

*Robinson v. Purkey,* .................................................................................. *passim*
    No. 3:17-cv-01263, 2017 U.S.Dist. LEXIS 165483 (M.D.Tenn. Oct. 5, 2017)

*Sickles v. Campbell Cty.* ................................................................................... 14
    501 F.3d 726 (6th Cir. 2007)

*Slade v. Hampton Roads Reg'l Jail* .................................................................. 14
    407 F.3d 243 (4th Cir. 2005)

*Tate v. Short* ..................................................................................................... 9
    401 U.S. 395 (1971)

iii

*Tillman v. Lebanon Cty. Corr. Facility* ....................................................................... 14
    221 F.3d 410 (3d Cir. 2000)

*Todd v. Weltman, Weinbert & Reis Co. L.P.A.* ............................................................ 5
    434 F.3d 432 (6th Cir. 2006)

*United States v. Kras* ...................................................................................................... 11
    409 U.S. 434 (1973)

*Waters v. Bass* .................................................................................................................... 14
    304 F.Supp.2d 802 (E.D.Va. 2004)

*Wells v. Malloy* .................................................................................................................. 15
    402 F. Supp. 8566 (D.Vt. 1975)

*Williams* v. *Illinois* ......................................................................................................... 10
    399 U.S. 235 (1970)

**Statutes**

Tenn. Code Ann. § 40-24-105(b) (2017) ........................................................... *passim*

**Other Authority**

*Statement of Interest of the United States*, .................................................................. 10
    *Stinnie v. Holcomb*, No. 3:16-CV-00044 (W.D.Va)

iv

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

```
-------------------------------------------------------X
```

JAMES THOMAS and DAVID HIXSON, on
behalf of themselves and all others similarly
situated,

                Plaintiffs,

      v.

DAVID W. PURKEY, Commissioner of the
Tennessee Department of Safety and Home-
land Security,

                Defendant.

No. 3:17-cv-00005
JUDGE TRAUGER

```
-------------------------------------------------------X
```

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This Court should deny the Commissioner's motion for summary judgment and grant the Plaintiffs' motion. On the undisputed facts, Tenn. Code Ann. § 40-24-105(b) (the "Statute") violates Equal Protection and Due Process.

Given the overlap between Plaintiffs' motion and the Commissioner's, this brief and Plaintiffs' Reply Brief on their motion incorporate by reference from one another to the extent possible. Each brief addresses the arguments of the Commissioner that are specific to the individual motion; common issues are addressed in one brief, with cross-references in the other.[1]

This brief addresses three issues: (1) the Commissioner's effort to deflect attention from the constitutional issues by dredging up Mr. Hixson's long-ago—and, as we show in Point I below, irrelevant—conviction on a matter that forms no part of the Court Debt here at issue; (2) why *Rooker-Feldman* does not apply here (Point II); and (3) why the Statute cannot pass con-

---

[1] Submitted with this brief are a response to the Commissioner's Rule 56.01 Statement, a supplemental Declaration of David Hixson, and a Declaration Pursuant to Fed.R.Civ.P. 56(d). A list of the abbreviations used in referring to Plaintiffs' previous papers and to the Commissioner's filings on the two summary judgment motions is appended to this brief.

stitutional muster either under the *Bearden* test or under rational basis review. Plaintiffs' arguments concerning *James v. Strange* and procedural due process are set forth in Plaintiffs' Reply Brief and incorporated by reference here.

For the reasons set forth in this brief, and in Plaintiffs' moving brief and reply brief in support of their motion for summary judgment, the Statute violates the Equal Protection and Due Process Clauses. Accordingly, the Commissioner's motion for summary judgment should be denied and summary judgment should be entered for Plaintiffs.

## I.  MR. HIXSON'S 2003 CONVICTION IS IRRELEVANT

In his haste to attack Plaintiff Hixson, Commissioner Purkey gets the facts wrong and gets the law wrong. Factually, the monetary obligations from Mr. Hixson's 2003 conviction are no part of the $2,583 in Court Debt described in his declaration. As the Attorney General's Office knew—or could have known had it called the Washington County Clerk, as Mr. Hixson did prior to the commencement of this action (Hixson Opp. Dec ¶ 2)—that amount is made up of solely $75 in fines and about $2,500 in costs from the Washington County convictions in 2013 and 2015: $548.95 in No. 38837 (2013), $1,492.90 in related No. 38839 (2013), and $541.95 in No. 40806 (2015). Commissioner Purkey himself acknowledges this on his Department's website, where on November 13, 2017 (one week after he filed his papers here) he lists Mr. Hixson's reinstatement requirements as arising from Washington County cases 40806 and 38837 (Hixson Opp. Dec. Ex. A). The Cortazar Declaration he has submitted likewise refers only to the 2013 and 2015 convictions (ECF ##62-4, -6, -7). Mr. Hixson's 2003 conviction, therefore, is irrelevant to the license deprivation Mr. Hixson challenges.

As a matter of law, moreover, the 2003 conviction could *never* have formed part of the Court Debt for which Mr. Hixson's license was revoked, because it predated by eight years the

2

effective date of the Statute at issue in this litigation. Section 4 of the law that wrote Section 40-24-105(b) into the Tennessee Code states:

> SECTION 4. This act shall take effect July 1, 2011, the public welfare requiring it, and shall apply to offenses committed on or after July 2, 2011.

Acts 2011, ch. 504 (Ex. 1 to this brief) (downloaded from tn.gov on Dec. 9, 2017).

Commissioner Purkey's purported basis for including the 2003 conviction in his motion is as part of his *Rooker-Feldman* argument (DMSJ at 18), suggesting that Plaintiffs are asking the Commissioner to review determinations of the sentencing court. But as this Court noted in *Robinson v. Purkey*, No. 3:17-cv-01263, slip op. at 21 (M.D.Tenn. Oct. 5, 2017), and as Plaintiffs demonstrate further in Point II below, "This is not a case about whether [plaintiffs] should be permitted to avoid the fines and costs that they owe. Reinstating [plaintiffs'] licenses would in no way erase their debts, nor would it preclude local authorities from seeking to enforce those debts through other means."

The 2003 conviction is irrelevant, and the Commissioner's attempted use of it is wrong.

## II. *ROOKER-FELDMAN* DOES NOT APPLY HERE

The *Rooker-Feldman* doctrine does not apply to this case, and this Court accordingly has jurisdiction over the subject matter of this action.

*Rooker-Feldman* occupies "narrow ground." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It bars federal courts from hearing "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* When applying the doctrine in the Sixth Circuit, the Court must inquire as to "the source of the injury the plaintiff alleges in the federal complaint." *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) (quoting *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)).

3

If "the source of the injury is the state court decision," the district court may not assert jurisdiction." *Id.* But "[i]f there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.* Thus, even if the claimed injury relates in some way to a state court judgment, if the relief plaintiff seeks does not require invalidation of the judgment, *Rooker-Feldman* does not apply. *Powers v. Hamilton County Pub. Defender Comm'n,* 501 F.3d 592, 606 (6th Cir. 2007).

Here, Plaintiffs do not complain of injuries caused by state court judgments. They do not seek to vacate those judgments, nor do they dispute the amounts of the judgments. They do not ask this Court to relieve them from the obligation to pay the debts. Rather, the injury of which Plaintiffs complain—the Commissioner's taking of their driver's licenses in violation of Due Process and Equal Protection—is separate and distinct from the judgments. No state court has ordered the revocation of Plaintiffs' licenses; under Tennessee law, it is the *Commissioner*—not the state court—who is responsible for revoking licenses for nonpayment of Court Debt. Tenn. Code Ann. § 40-24-105(b)(1) (2017).

And the relief Plaintiffs seek is likewise directed at the Commissioner and is independent of the judgments of conviction and the sentences imposed. Plaintiffs seek declaratory and injunctive relief preventing the Commissioner from revoking their driver's licenses without notice and consideration of their ability to pay. This is not substituting the Commissioner's judgment for that of the state courts (*see* DMSJ at 18), because even if the Commissioner stops revoking the licenses of people who are too poor to pay Court Debt, the state court judgments would remain in full force and effect and could be collected if and when the license-holders develop an ability to pay.

4

Plaintiffs' challenge here is that the Statute is an unconstitutional method of debt collection. The law of this Circuit is that, for *Rooker-Feldman* purposes, such challenges are independent of the underlying state court judgments they seek to collect. *Todd v. Weltman, Weinbert & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) (*Rooker-Feldman* did not bar "independent federal claim" that defendant used unlawful methods to collect a state court judgment). *Todd* is directly on point and controls the outcome in this case; Defendant's mischaracterization of "license revocation [as] a means to enforce the underlying court judgment" (DMSJ at 20) is simply incorrect as a matter of law. *Accord Meyer v. Debt Recovery Solutions, Inc.*, 2010 U.S.Dist. LEXIS 91251, at *11 (N.D.Ohio Sept. 2, 2010) (*Rooker-Feldman* inapplicable where "the plaintiffs challenged the manner of collection rather than the underlying debt"); *accord, e.g.*, *McDermott v. Barton*, 2014 U.S.Dist. LEXIS 165656 (S.D.Ill. Nov. 26, 2014) (*Rooker-Feldman* inapplicable where plaintiff is "contesting the method and manner in which [defendant] obtained and enforced the judgment").

The Commissioner's cases are inapposite. *King v. Creed*, 2015 U.S.Dist. LEXIS 24559 (Mar. 2, 2015), *reh'g denied*, 2016 U.S.Dist. LEXIS 5210 (N.D.N.Y. Jan. 15, 2016), concerned a *pro se* litigant who was unwilling, not unable, to pay a traffic ticket. King conceded in his complaint that "he received a notice of suspension" and that "his license was validly suspended." 2015 U.S. Dist. LEXIS 24559, at *11-12. He identified no independent wrongful act that the defendants in that case committed; his true quarrel was with the judgment itself. And to the extent that the court in *Creed* implied that *any* challenge to the enforcement of a state court judgment would be barred by *Rooker-Feldman* (*see* DMSJ at 19-20), the Sixth Circuit has foreclosed such argument by its decision in *Todd*.

5

*Normandeau v. City of Phoenix*, 516 F.Supp.2d 1054 (D.Ariz. 2005) (DMSJ at 20-21), similarly involved a *pro se* plaintiff who refused to pay traffic fines. There the plaintiff sought a declaration that the traffic citations issued against him were unconstitutional and asked the federal district court to "overturn the convictions" and "throw the tickets out of court." *Id.* at 1064. Plaintiffs seek no such relief in this case. Furthermore, Plaintiffs do not ask this Court "to find a specific [Tennessee] statute unconstitutional as state courts have applied it" to them (DMSJ at 21). No state court has ruled that the application of the Statute to the Plaintiffs in this case complied with Due Process and Equal Protection.

The attacks on the judgments themselves in *Creed* and *Normandeau* are of a piece with this Court's decision in *Davis v. Wells Fargo, N.A.*, 2013 U.S.Dist. LEXIS 13208, at *11 (M.D. Tenn. Jan. 31, 2013), which involved a direct attempt "to enjoin the state-court action or to set aside the judgment granting possession of the house located at 1005 9th Avenue South, Nashville, Tennessee to Wells Fargo." *Rooker-Feldman* plainly applies to such a claim, but as this Court pointed out in *Robinson v. Purkey*, no attempts to enjoin state court action or set aside state court judgments are being made here. Accordingly, *Rooker-Feldman* does not apply.

The Commissioner argues that instead of challenging the Commissioner's unconstitutional revocation of their driver's licenses, Plaintiffs should ask the sentencing court to reduce or waive their Court Debt (DMSJ at 16). As set forth in detail in Plaintiffs' moving papers however (PMSJ at 24, 26-27), and as the Commissioner has wholly failed to rebut or even acknowledge in either of his briefs, the statutory provisions for waiver or reduction of fines and costs are entirely discretionary; courts can and do withhold relief even when people are indigent and have no ability to pay.[2] Waiver or reduction of Court Debt is not required just because a person is indigent,

---

[2] The sentencing court permitted Plaintiff Hixson to make payments of $30 per month, but the Commissioner has admitted that Mr. Hixson cannot afford to pay anything at all

6

especially because the person may become non-indigent in the future, and the government need not forever forgo its right to collect Court Debt.

This case is not about the amount of the judgments but about how they are collected. It is not about discretion but about constitutional right. Limiting indigent Tennesseans to requesting discretionary relief, which may well not be granted, which may well not be sufficient, and to which different substantive legal standards apply, cannot cure the constitutional deprivations. Plaintiffs' substantive constitutional claim is that the Commissioner, in the exercise of his independent statutory authority under § 40-24-105(b), may not revoke their licenses for nonpayment of Court Debt without notice or consideration of their ability to pay that Debt. Adjudicating that claim does not in any way invalidate the state court judgment of conviction that gave rise to the Debt.

The Commissioner's *Rooker-Feldman* arguments fail.

## III. THE STATUTE IS UNCONSTITUTIONAL BECAUSE IT DEPRIVES PLAINTIFFS OF SUBSTANTIVE DUE PROCESS AND VIOLATES THE EQUAL PROTECTION CLAUSE

### A. On *Bearden* and *Robinson v. Purkey*

In *Robinson v. Purkey* this Court read *Johnson v. Bredesen* as limiting *Bearden* to cases involving certain fundamental rights and therefore analyzed the Traffic Debt statutes at issue in *Robinson* under a rational basis test. As we set forth in more detail in Point III.C below, the Court's rational basis analysis in *Robinson v. Purkey* applies equally to the Court Debt Statute at issue here. Even under the lower standard, then, the Court Debt Statute cannot stand under the Equal Protection Clause.

---

(DOpp56.01 ¶ 81). Mr. Hixson struggles financially and does not earn enough to meet the basic necessities of life. *Id.* What the sentencing court did as a payment plan, and what the Commissioner may do when Mr. Hixson is unable to pay, are two separate issues.

Before turning to the rational basis analysis, however, Plaintiffs invite the Court to look again at *Johnson*'s treatment of *Bearden*. Plaintiffs submit that *Johnson* does not stand for the proposition that the *Bearden* test does not apply when no *fundamental* interest is involved. Instead, *Johnson* holds more narrowly that *Bearden* does not apply when no *protected* interest is involved. Indeed, only this narrow reading of *Johnson* is consistent with *Bearden* itself. The first element of the four-part balancing test laid out in *Bearden* is "the nature of the individual interest affected," 461 U.S. at 666-67, which necessarily includes a range of possible interests. The *Bearden* Court would not have referred to interests in general, nor framed the test in terms of multi-factor balancing, if the presence of certain specifically enumerated interests were a threshold that had to be crossed before the rest of the test even became relevant.

The Sixth Circuit identified physical liberty as a protected interest justifying a higher standard of review in *Bearden*, *Johnson*, 624 F.3d at 748, but it did not say that was the only basis on which one could have heightened scrutiny. The Court of Appeals also found that the interests described in *James v. Strange*, 407 U.S. 128 (1972), "trigger[ed] a heightened standard of review," *Johnson*, 624 F.3d at 749, and those interests—including the debtor's ability to "support[] himself and his family" and "the hopes of indigents for self-sufficiency and self-respect," *id.* (quoting *Strange*, 407 U.S. at 141-42)—are exactly the interests that are implicated in this case.

In contrast to the protected interests that the Sixth Circuit identified in *Bearden* and *Strange*, the convicted felons in *Johnson* had no protected interest to assert. The plaintiffs there had lost their voting rights as part of the criminal punishment, a disenfranchisement they could not and did not challenge. *Id.* at 746. Because the right to vote was lawfully taken away on conviction, its restoration was a mere act of legislative grace, something "to which Plaintiffs have no

8

legal claim." *Id.* at 749. Here, of course, the Plaintiffs have "important interests" in their driver's licenses, which are "essential in the pursuit of a livelihood," *Bell v. Burson*, 402 U.S. 535, 539 (1971), and to the ability to sustain oneself and one's family. And the Statute strips Plaintiffs of their driver's licenses, not as part of the punishment, but solely as a consequence of subsequent nonpayment (*i.e.*, solely as a method of debt collection), perversely leaving Plaintiffs unable to secure employment necessary to pay Court Debt.

In *Robinson*, this Court recognized that *Bearden* involves "not the distinction between fundamental and non-fundamental rights, but the principle that, when it comes to assessing the constitutionality of a material burden, '[l]aw addresses itself to actualities,' not merely the abstract" (slip op. at 17-18). If there is a threshold under *Bearden*, it is the materiality of the "burden" being imposed. In *Johnson*, there was no burden, material or otherwise, because the original deprivation of the franchise was not subject to challenge. Here, in contrast, the deprivation is precisely what is being challenged, and the burden, under *Bell*, is plainly material.

**B.    *Bearden* Applies Here**

In *Bearden*, Justice O'Connor writing for the Court reviewed *Williams v. Illinois*, 399 U.S. 235 (1970), *Tate v. Short*, 401 U.S. 395 (1971), and *Griffin v. Illinois*, 351 U.S. 12 (1956), among other cases, and summarized their cumulative analysis to establish a framework that addressed Due Process and Equal Protection simultaneously. Specifically, the *Bearden* Court recognized that the components of fairness and equality in criminal-related contexts could not be artificially separated but rather "converge[d]":

> Due process and equal protection principles converge in the Court's analysis in these cases. . . . [W]e generally analyze the fairness of relations between the criminal defendant and the State under the Due Process Clause, while we approach the question whether the State has invidiously denied one class of defendants a substantial benefit available to another class of defendants under the Equal Protection Clause. 461 U.S. at 665.

9

As Justice O'Connor's analysis shows, *Bearden* clearly applies when it comes to poverty-based consequences that affect those impacted by the criminal legal system. As this Court has recognized, *Bearden* "set forth and refined certain core protections for indigent individuals facing state-imposed consequences based on their failure to pay sums owed related to their convictions." *Robinson v. Purkey,* slip op. at 12; *accord Statement of Interest of the United States* at 15, *Stinnie v. Holcomb*, No. 3:16-CV-00044 (W.D.Va) (*Bearden* "prohibits the imposition of adverse consequences against indigent defendants solely because of their financial circumstances, regardless of whether those adverse consequences take the form of incarceration, reduced access to court procedures, or some other burden.").

The Statute here imposes a consequence for nonpayment of Court Debt that is not part of the criminal punishment. The statutes under which Plaintiffs were convicted do not provide for revocation of their driver's licenses as a possible part of the punishment; revocation occurs only because Plaintiffs do not have enough money to pay Court Debt. By mandating license revocation as a consequence for not paying Court Debt that Plaintiffs cannot pay because of their poverty, the Statute works "an impermissible discrimination that rests on ability to pay." *Williams*, 399 U.S. at 241. Under such circumstances, where Equal Protection and Due Process principles converge, this Court must apply the *Bearden* balancing test to judge the constitutionality of the state-imposed consequences. *Bearden*, 461 U.S. at 666-67.

The Commissioner argues that the *Bearden* line of cases applies only to cases where certain fundamental rights are at stake, relying heavily on *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996). The Commissioner construes *M.L.B.* too broadly. The question before the court in *M.L.B.* was not the general application of the *Griffin/Bearden* line of cases within the criminal context, but whether to extend their logic to certain civil cases, which have long been afforded lesser protections. *Id.*

10

at 109. In holding that *Bearden* applies to civil cases implicating fundamental rights, the Court did not diminish the existing applicability of *Bearden* in the criminal or quasi-criminal context. *Id.* at 127-28.[3]

Nor could it. Nowhere in the text of *Bearden* did the Supreme Court indicate that its test should be limited to cases involving fundamental rights. As noted above, the *Bearden* Court directs consideration of "the nature of the individual interest affected," which itself indicates that the Court contemplated the test applying to multiple kinds of interests.

Several of the cases on which *Bearden* relies do not concern "fundamental" rights. *Griffin* itself concerned access to appeals, and "the Federal Constitution guarantees no right to appellate review." *M.L.B.*, 519 U.S. at 110 (citing *Griffin*, 351 U.S. at 18). In *Mayer v. Chicago*, 404 U.S. 189 (1971), the Supreme Court had the opportunity to limit *Griffin* to those cases involving a risk of incarceration. The Court rejected that opportunity, holding that "the invidiousness of the discrimination . . . is not erased by any differences in the sentences that may be imposed." *Id.* at 197. The Court observed that "[a] fine may bear as heavily on an indigent accused as forced confinement" and specifically mentioned the loss of a professional license as a "collateral consequence[]" that could be "even more serious" than confinement. *Id.* In *Rinaldi v. Yeager*, the Supreme Court reviewed a criminal cost recoupment statute that applied only to those who were sentenced to incarceration and concluded that "[t]here is no defensible interest served by focusing on that distinction as a classifying feature in a reimbursement statute." 384 U.S. 305, 309 (1966). In sum, within the criminal context, which this case is squarely in, Supreme Court precedent does not support limiting *Bearden* to cases involving fundamental rights.

---

[3] The Supreme Court did not extend *Griffin* to cases involving bankruptcy, *United States v. Kras*, 409 U.S. 434 (1973), and welfare benefits. *Ortwein v. Schwab*, 410 U.S. 656 (1973), because there the contexts were strictly civil, not criminal-related, and did not implicate any fundamental interest.

11

**C.    The Statute Cannot Survive Application of the *Bearden* Test**

The application of the *Bearden* test to this case is set forth at PMSJ 14-17. The Commissioner spends a great deal of time arguing against applicability of *Bearden*, but he does not, and cannot, suggest that application would have any result other than invalidation of the Statute. We show in the next Section that the Statute fails rational basis review as well. The bottom line here is the same as it was in *Robinson*: "Suspending a driver's license is . . . not merely out of proportion to the underlying purpose of ensuring payment but affirmatively destructive of that end." Slip op. at 27.

**D.    The Statute Cannot Survive Rational Basis Review**

Even assuming rational basis review applies, the Statute here cannot pass constitutional muster. The Court's analysis in *Robinson v. Purkey* applies here *a fortiori*.

The Commissioner asserts seven state interests to support the Statute (DMSJ at 24-25). Each of them is asserted as a state interest in having Court Debtors pay their judgments. The Commissioner's own phrasing of interests (2), (5), (6), and (7) says so expressly,[4] and payment is at the core of interests (1), (3), and (4) as well.[5] For purposes of this motion, Plaintiffs do not

---

[4]    Interests (2), (5), (6), and (7) are:

> (2)    ensuring that victims of crime are made whole by receiving payment of restitution from the criminal defendant who caused them financial harm;

> (5)    shifting some of the costs of enforcing the state penal code from taxpayers as a whole to the particular individuals who engage in criminal conduct;

> (6)    having a cost-effective method of collecting criminal judgment assessments; and

> (7)    increasing the likelihood of collecting criminal judgment assessments.

Although it does not matter to the rational basis analysis, interest (2) is irrelevant, as it is now agreed that the Statute here cannot be used as a basis to collect unpaid restitution.

[5]    Interest (1) is "ensuring compliance with court orders," but the "court orders" are for fines, costs, and litigation tax, and the only "compliance" at issue here is payment. The same is true of interest (3), "requiring criminals to fulfill their sentences," since the only sentences at issue are for payment of money. Likewise as to interest (4), "furthering offender ac-

question the desirability of having payment made where possible, but in the case of indigent Court Debtors the Statute is not rationally related to meeting them.

"Rational-basis review requires a two-step process. First, one must identify a legitimate government interest the enacting government body could have been pursuing. Second, one must determine whether a rational basis exists to believe that the legislation would further the hypothesized purpose." *City of Mayfield Heights v. Woodhawk Club Condo. Owners Assoc.*, 205 F.3d 1339 (6th Cir. 2000) (citation and quotations omitted); *cf. City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447–50 (1985) (examining and rejecting proffered legitimate reasons for classification because the reasons were not in fact rationally related to the classification).

The rational basis analysis here begins and ends with this Court's decision in *Robinson v. Purkey*. The Commissioner ignores *Robinson* (it is cited nowhere in either of his briefs), but it is directly on point and dispositive. Thus:

> Suspending a driver's license is therefore not merely out of proportion to the underlying purpose of ensuring payment, but affirmatively destructive of that end. In the parlance of *Johnson*, taking an individual's driver's license away to try to make her more likely to pay a fine is not using a shotgun to do the job of a rifle: it is using a shotgun to treat a broken arm. There is no rational basis for that.

Slip op. at 17. *Accord Bearden*, 461 U.S. at 670:

> Revoking the probation of someone who through no fault of his own is unable to make restitution will not make restitution suddenly forthcoming.

Likewise in accord is the sponsor of the 2017 Amendments to the Statute, who noted that "[i]n the aggregate, I think the court clerks throughout the state, and there may be exceptions county by county or jurisdiction by jurisdiction, what they've seen is actually a *decrease* in some of these fees" and gave the obvious explanation as to why:

> countability," since the only demonstration of "accountability" the "offender" is being asked to make is to pay money.

13

When the bill was passed originally, the one that this is sort of updating, it was thought, well, if we hold their driver's license back it will give them a carrot to encourage them to pay. *Really what it does is it puts them even further behind the eight ball.* Now they don't have a driver's license, and if they drive to work they may be subject to be stopped for driving without a license or they may simply not go to work. (S56.01 ¶¶ 42, 43).

The Commissioner cites *Sickles v. Campbell Cty.*, 501 F.3d 726, 731 (6th Cir. 2007) (DMSJ at 26), and *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 921 (8th Cir. 2016) (DMSJ at 27), to support the purported interest of cost-shifting to the defendant and cost-effective collections. The question at issue in both cases was the validity of the state interest, not the rationality of the means of collection. Here, we assume the validity of the state interest, but it is irrational to believe that the Statute furthers that interest.[6] In *Sickles* and *Mickelson*, the county seized money that the defendants had in their pockets. Here, however, that Statute not only operates on people whose pocketbooks are empty it takes away their means of filling them.

---

[6] The remaining cases cited in footnote 13 of the Commissioner's memorandum address the validity of the purported interest in cost-shifting—but again, in each, the rationality of the policy was not challenged based on ability to pay, nor did the plaintiffs there suffer consequences beyond owing the imposed debts. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 251 (4th Cir. 2005) (no ability to pay issue); *Waters v. Bass*, 304 F. Supp. 2d 802, 807 (E.D. Va. 2004) (unpaid debt will be prepared for collection); *Broussard v. Par. of Orleans*, 318 F.3d 644, 651 (5th Cir. 2003) (noting that no "arrestee who was otherwise able to make bail was ever kept in jail because he or she did not, or could not, pay the de minimis administrative fee"). Similarly, no benefits were denied based on inability to pay in *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 414 (3d Cir. 2000) ("Significantly, the availability of prison services is not contingent upon keeping a clean account. Failure to pay does not result in the denial of room, board, clothing, or other services. Neither can it result in extended prison time or reincarceration."). The worst thing that happened if any debt remains unpaid upon the prisoner's release is for the debtor to "remain[] responsible for the debt as a civil liability," *id.*, an option denied to plaintiffs here. Nor are the two additional cases cited in the Commissioner's opposition brief footnote relevant (DOpp at 13 n.11), for they addressed the validity of a different interest, *see Blackhawk Mining Co. v. Andrus*, 711 F.2d 753, 757 (6th Cir. 1983) (noting that the mining company's "only private interest in this case is the temporary deprivation of its money"; inability to pay not raised), and enforcement of willful refusal to pay, *see Carter v. Lynch*, 429 F.2d 154, 156 (4th Cir. 1970) (upholding use of contempt power under state law where defendant was "fraudulently concealing his property" from civil judgment).

14

The Commissioner's extensive reliance on *Wells v. Malloy*, 402 F.Supp. 856 (D.Vt. 1975), *aff'd mem.*, 538 F.2d 317 (2d Cir. 1976), which is quoted and discussed over five pages of his brief (DMSJ at 27-31), is likewise misplaced. The license suspensions in *Wells* were for failure to pay taxes on the *ownership* of automobiles, and the court noted that the taxes were devoted to highway maintenance, 402 F.Supp. at 862, and that Vermont could rationally have concluded that "if the taxpayer could afford the purchase of the car he should be able to afford the tax," *id.* at 861.

*Wells* predates *Bearden*, which held that a finding of willfulness is a *prerequisite* to the use of revocation as a collection tool. And whatever conditions may have been in Vermont in the mid-1970s, Tennesseans in the 21st Century need to drive or they have no hope of working—and, thus, of paying off their Court Debt. Unlike in *Wells*, there is a factual record here, and paragraphs 92-104 of Plaintiffs' Rule 56.01 Statement on their own motion for summary judgment[7] confirm this Court's observation in *Robinson*, slip op. at 17, that "one needs only to observe the details of ordinary life to understand that an individual who cannot drive is at an extraordinary disadvantage in both earning and maintaining material resources."

Accordingly, the Statute here is not rationally related to any of the asserted justifications, and it therefore violates Equal Protection and Due Process.

---

[7] In his opposition to Plaintiffs' motion, the Commissioner asserts that the evidentiary support for these paragraphs is inadmissible. The Commissioner is wrong, for the reasons set forth in Point I of Plaintiffs' Reply Brief on their motion, but for purposes of *the Commissioner's motion*, it would not matter if the Commissioner were right. Even if the materials supporting those paragraphs are not now admissible, they can plainly be made admissible (as to the Census data) or, if necessary, become the subject of expert testimony (the Brookings report), and Plaintiffs are entitled under Rule 56(d) to an opportunity to obtain that proof.

15

**E.** **The Statute Violates Equal Protection Because the State Grants Itself Debt Collection Practices It Forbids to Private Creditors**

Plaintiffs incorporate by reference Point III of their Reply Brief on their Motion for Summary Judgment.

**F.** **The Statute Deprives Plaintiffs of Procedural Due Process**

Plaintiffs incorporate by reference Point IV of their Reply Brief on their Motion for Summary Judgment.

CONCLUSION

The motion for summary judgment should be denied.

s/ Matthew G. White
_____
Matthew G. White (TN #30857)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
First Tennessee Bank Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
901-577-8182
mwhite@bakerdonelson.com

s/ Claudia Wilner
_____
Claudia Wilner (NY #4264156)
Edward P. Krugman (NY # 1665892)
Theresa Lau (NY #5496526)*
NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
212-633-6967
wilner@nclej.org
krugman@nclej.org
lau@nclej.org

s/ Premal Dharia
_____
Premal Dharia (DC #484091)
Jonas Wang (NY #5531769)*, **
CIVIL RIGHTS CORPS
910 17th Street NW, Suite 200
Washington, DC 20006
202-670-4809
premal@civilrightscorps.org
jonas@civilrightscorps.org

s/ Josh Spickler
_____
Josh Spickler TN (TN #21019)
JUST CITY
902 South Cooper Street
Memphis, TN 38104
901-206-2226
josh@justcity.org

December 15, 2017

* *Pro hac vice* application submitted or forth-
 coming
** *Admitted to practice in New York; not admit-
 ted in the District of Columbia. Practice is
 limited pursuant to D.C. App. R. 49(c)(3).*

**GLOSSARY**

| | |
|---|---|
| PMSJ | Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment (ECF #37) |
| SF | Factual Stipulations Between the Parties (ECF #40) |
| S56.01 | Plaintiffs' Statement of Undisputed Facts submitted in support of Plaintiffs' Motion for Summary Judgment (ECF #39) |
| DOpp56.01 | Defendant's Response to Plaintiffs' Statement of Undisputed Facts (ECF #64) |
| D56.01 | Defendant's Statement of Undisputed Fact in Support of His Motion for Summary Judgment (ECF #62) |
| DMSJ | Defendant's Memorandum of Law in Support of His Motion for Summary Judgment (ECF #63-1) |
| DOpp | Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment (ECF #65) |
| POpp56.01 | Plaintiffs' Response to Defendant's Statement of Undisputed Facts |
| POpp | Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment |

17

## CERTIFICATE OF SERVICE

     I hereby certify that on the 15th day of December, 2017, a true and correct copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment was filed with the Court using the CM/ECF system which will send notice to counsel of record who are registered with the CM/ECF system.

                           /s/ Matthew G. White

                          _____